NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 29

No. 2015-253

| Synecology Partners, L3C | Supreme Court |
| --- | --- |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| Business RunTime, Inc., et al. | December Term, 2015 |

Helen M. Toor, J.

Lawrence Kenney, South Burlington, and Franklin Kochman, Burlington, for Plaintiff-Appellant.

Craig S. Nolan and Kevin A. Lumpkin of Sheehey Furlong & Behm P.C., Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **EATON, J.**     In this dispute between two computer software companies, SynEcology Partners, L3C challenges the trial court's order dismissing its complaint against Business RunTime, Inc. stemming from its failure to comply with Business RunTime's discovery requests. For the reasons stated herein, we affirm.

¶ 2.     In 2008, SynEcology's founders, Edward Grossman and Jeanne Conde, sold the company's assets to Lawrence Kenney. Grossman and Conde subsequently started a new software company, Business RunTime. In August 2011, SynEcology filed a civil complaint in Chittenden Superior Court against Business RunTime, Edward Grossman, Jeanne Conde, and

two former SynEcology employees, Thomas Reynolds and Toby Leong, for alleged fraud, theft of intellectual property, industrial sabotage, computer crimes, burglary, larceny, willful breaches of nondisclosure and employee contracts, theft and disclosure of trade secrets, and tortious interference with contractual relations. What followed was a protracted discovery phase, culminating in Business RunTime's motion for contempt, sanctions, and attorneys' fees, filed on July 23, 2014, which ultimately resulted in dismissal of SynEcology's complaint.

¶ 3. On April 17, 2012, Business RunTime filed its first set of interrogatories and production requests, due May 17, 2012. Among other things, Business RunTime specifically requested all emails relevant to SynEcology's claims.[1] On May 22, 2012, and again on June 1, 2012, Business RunTime made inquiries as to when it could expect a response to the production request. On June 20, 2012, Business RunTime moved to compel SynEcology to respond to the interrogatories and production requests. The motion was granted on August 3, 2012.

¶ 4. SynEcology filed its first set of responses on August 31, 2012, three months after the deadline for Business RunTime's initial request. Those responses contained a CD with PDF files purporting to include all relevant emails. Some of the emails were in chronological order, although none were in native format[2], appearing instead in list form with no indication as to where one email ended and another began. Although the PDF files included some emails from Mr. Kenney's work account (the Outlook account) and the inboxes of two SynEcology employees, there was only one email from the year 2010, and there were no emails from Mr. Kenney's personal account (the Comcast account). In addition to filing its responses,

---

[1] Business RunTime requested "all emails constituting, showing, referring, or relating to any of the allegations in the Complaint" and reserved "the right to request native electronic formats, with all metadata, of any emails that are produced."

[2] In the context of software applications, native format refers to the format in which the file was created.

2

SynEcology objected to the production of some emails "as to attorney-client communication, communication with retained experts and spousal communications," and indicated that "[w]ithout waiving the objection and subject to the objection," it would "provide the emails requested, subject to a protective order."

¶ 5.    On October 17, 2012, Business RunTime offered SynEcology a proposed protective order covering information and documents that genuinely fell within the scope of Vermont Rule of Civil Procedure 26(c)(7), but noted its skepticism that all of the materials withheld truly fell within the scope of the Rule and reserved the right to object to discovery materials designated as privileged.  Business RunTime specifically requested the native electronic formats of the emails produced, including the complete email inboxes of Mr. Kenney and the two relevant SynEcology employees.

¶ 6.    On February 25, 2013, SynEcology signed the protective order.  On March 1, 2013, nearly eleven months after the initial request, SynEcology responded to the remainder of Business RunTime's requests, indicating that by the next week, it would "produce a CD with as many of the documents as [it] can assemble in native format.  This will include all of the Outlook files."

¶ 7.    Four months later, on June 5, 2013, SynEcology supplemented its discovery responses, providing a CD with emails from Mr. Kenney, Thomas Barkley, and Joseph Luo, but no emails from Mr. Kenney's Comcast account, and no emails in native format.  Eighty-six of the emails provided on June 5 were redacted on grounds of privilege.  SynEcology indicated the date, time, sender, and recipient of the privileged emails, but provided no privilege log.

¶ 8.    Following this supplemental response, Business RunTime made three separate attempts to obtain the emails in native format, as well as the remainder of the emails dated 2010

3

from Mr. Kenney's Outlook account and all relevant emails from his Comcast account. These attempts, in December 2013, February 2014, and March 2014, proved fruitless.

¶ 9.    On March 4, 2014, nearly two years after its initial production request, Business RunTime filed a second motion to compel production. The trial court granted the motion on May 22, 2014, ordering SynEcology to produce, by July 1, 2014, all emails "constituting, showing, referring or relating to any of the allegations in the complaint" in native format, and a privilege log identifying emails withheld on the grounds of privilege.

¶ 10.    On July 3, 2014, SynEcology produced emails from Mr. Kenney's and two other SynEcology employees' Outlook accounts, including 1881 emails from 2010, but no emails from Mr. Kenney's Comcast account and no privilege log. SynEcology provided no explanation as to why some of the 2010 emails were withheld in its initial production response—the number had risen from one email produced in August 2012 to 1881 emails produced in July 2014.

¶ 11.    Business RunTime made two further requests to SynEcology for supplemental production of emails from Mr. Kenney's Comcast account and a privilege log. On July 25, 2014, SynEcology responded to these requests, indicating that there were no relevant emails from Mr. Kenney's Comcast account. Although SynEcology promised to provide a privilege log by the following week, in early August 2014 SynEcology indicated that it would send the requested emails without a privilege claim. SynEcology subsequently produced forty-eight of the eighty-six emails previously claimed as privileged.

¶ 12.    On July 23, 2014, Business RunTime filed a motion for contempt and sanctions, seeking dismissal as a result of SynEcology's continuing failure to produce all relevant emails from Mr. Kenney's Comcast account and a privilege log. On August 13, 2014, SynEcology responded to the motion, insisting that it had turned over all of the documents available to establish its case and prove its damages. In addition, SynEcology asserted that Mr. Kenney's

4

Comcast account was duplicative of his Outlook account, and that it had provided all of the emails previously claimed as privileged. On September 10, 2014, SynEcology's attorney, Jerome F. O'Neill, filed two additional documents with the trial court: a supplemental correction, acknowledging factual misrepresentations in their August 13 filing denying the existence of relevant emails in Mr. Kenney's Comcast account, and a motion for leave to withdraw as counsel. A hearing on the pending motions was scheduled for September 29, 2014.

¶ 13. At the hearing, the motion for leave to withdraw dominated the proceedings. Business RunTime stated once again, however, that by its motion, it was seeking dismissal, reiterating for the trial court the history of the protracted discovery process leading up to that hearing. Business RunTime also stated that, as a result of SynEcology's persistent misrepresentation of the facts regarding discovery, Business RunTime had lost faith in SynEcology's ability to comply truthfully with the discovery order.

¶ 14. The trial court granted attorney O'Neill's motion to withdraw and granted SynEcology additional time to obtain counsel and submit additional filings on the motion. On December 3, 2014, attorney John F. Evers appeared on behalf of SynEcology, and on December 16, 2014, SynEcology filed its supplemental opposition to Business RunTime's motion for contempt and sanctions. In that supplemental opposition, SynEcology reiterated that previous statements concerning the relevance of emails in the Comcast account were incorrect and indicated an ongoing attempt to locate any such emails. SynEcology also indicated its intent to provide a privilege log.

¶ 15. On December 30, 2014, SynEcology filed a discovery certificate, producing what it claimed to be all emails requested in April 2012. Specifically, SynEcology provided a CD containing nonprivileged emails from Mr. Kenney's Comcast account and indicated that it would, at a later date, provide a privilege log identifying those emails from the Comcast account

5

that were withheld under a claim of privilege. In its brief, SynEcology states that it produced, to the best of its knowledge, all emails required to be produced by the May 22, 2014 order, including the thirty-eight emails referenced in the contempt ruling. The record, however, does not reflect the number of emails produced, nor does it indicate the date, sender, recipient, contents, or subject lines of the emails included on the CD. Furthermore, there is no record that SynEcology produced a privilege log at any time following the December 30, 2014 discovery certificate concerning the emails that it was not producing under claim of privilege.

¶ 16. On February 26, 2015, the trial court granted Business RunTime's motion for contempt and sanctions, finding that SynEcology "failed to comply with the court's May 2014 order." In reviewing the two-and-a-half year discovery process, the trial court noted SynEcology's failure to explain the numerous discrepancies in its responses to production requests, including the production of 1880 additional emails from 2010, the intentional misrepresentation as to the existence of relevant emails from Mr. Kenney's Comcast account, and the failure to produce a privilege log, which had yet to be produced as of February 2015. For these reasons, the trial court concluded that SynEcology "purposefully and knowingly, and in bad faith, failed to provide accurate responses to the document requests for the emails from the Comcast account." As a result, SynEcology's complaint was dismissed. This appeal followed.

¶ 17. On appeal, SynEcology contends that the trial court erred in dismissing its claims for four reasons: (1) the circumstances called for a less drastic sanction than dismissal; (2) the dismissal was not related to a claim at issue in the discovery order; (3) the dismissal was based on objectively erroneous premises; and (4) the dismissal was without prior warning.

¶ 18. Under Vermont Rule of Civil Procedure 37, the trial court has discretion to sanction a party in varying degrees of severity for "fail[ure] to obey an order to provide or permit

6

discovery." V.R.C.P. 37(b)(2). If warranted by a finding of gross indifference, bad faith, or willfulness, coupled with substantial prejudice to the moving party, the trial court may dismiss the action or proceeding. John v. Med. Ctr. Hosp. of Vt., Inc., 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978). Imposition of sanctions under this rule "is necessarily a matter of judicial discretion" that is "not subject to appellate review unless it is clearly shown that such discretion has been abused or withheld." Id. at 519, 394 A.2d at 1135; accord State v. Lee, 2007 VT 7, ¶ 15, 181 Vt. 605, 924 A.2d 81 (mem.) ("As with other discovery rulings, the decision to impose sanctions for failure to comply with an order compelling discovery lies well within the trial court's discretion." (quotation omitted)).

¶ 19. Notwithstanding this broad discretion, we have held that "where the ultimate sanction of dismissal is invoked it is necessary that the trial court indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." Med. Ctr. Hosp. of Vt., Inc., 136 Vt. at 519, 394 A.2d at 1135. "The imposition of the dismissal sanction cannot be imposed merely as punishment for failure to comply with the court's order." Id. Rather, the party's failure must evidence "flagrant bad faith" and "callous disregard of responsibilities counsel owe to the court and to their opponents." Id. at 520, 394 A.2d at 1135 (citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976)); accord Rathe Salvage, Inc. v. R. Brown & Sons, Inc., 2008 VT 99, ¶ 12, 184 Vt. 355, 965 A.2d 460 ("Despite trial courts' otherwise broad discretion to impose discovery sanctions . . . litigation-ending sanctions are reserved for only the most flagrant cases and are inappropriate where failure to produce discovery is due to an inability fostered by circumstances outside of the party's control."). Failure to comply with the trial court's discovery orders may be deemed willful when

7

the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control. In addition, a party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault.

Handwerker v. AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (citations and internal quotations marks omitted), aff'd, 93 F.App'x 328 (2d Cir. 2004) (mem.).

¶ 20. Further, a party is prejudiced if the failure impairs their "ability to go to trial or threaten[s] to interfere with the rightful decision of the case." Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (citation omitted). The "[f]ailure to produce documents as ordered . . . is considered sufficient prejudice." Id. Although the law presumes prejudice from unreasonable delay, the presumption may be rebutted, and unless frivolous, will shift the burden to the moving party to show at least some actual prejudice. In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994) (citation omitted). It is then for the nonmoving party to persuade the trial court that "the claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse." Id. at 1453 (quotation omitted).

¶ 21. SynEcology's contention that the circumstances called for a less drastic sanction than dismissal is incorrect because the trial court's order includes findings that describe a pattern of conduct that satisfies the standard articulated in Med. Ctr. Hosp. of Vt., Inc., and therefore warrants dismissal. The trial court reviewed the thirty-four month long discovery process, which included multiple requests for supplemental production by Business RunTime and two motions to compel. In drawing the conclusion that SynEcology acted in bad faith, the trial court specifically noted SynEcology's repeated insistence that it had produced all emails from the Comcast account, which it later retracted, without explanation, when that insistence was shown

8

to be false.[3] With regard to its finding that SynEcology acted with deliberate and willful disregard for the court's orders, the trial court noted SynEcology's failure to produce a privilege log, despite promising to do so on at least three occasions and being compelled to do so by a court order. Further, the trial court found Business RunTime was prejudiced by this behavior because: (1) the case was delayed for more than two years; (2) it was required to engage in unneeded motion practice to obtain materials it was properly entitled to; and (3) it suffered increased attorneys' fees. Considering this, combined with SynEcology's repeated failures to comply with the production requests, including its failure to produce a privilege log, its numerous unmet promises to do so, and the production of additional emails without explanation, the trial court properly concluded that SynEcology "purposefully and knowingly, and in bad faith, failed to provide accurate responses to the document requests for the emails from the Comcast account" or an explanation for failing to comply with the trial court's May 2014 order to produce a privilege log.

¶ 22. SynEcology contends that the trial court's dismissal was in error because it was not related to a particular claim at issue in the discovery order. SynEcology argues that it was incumbent on the trial court to explain how the alleged discovery failures were serious enough to justify dismissal. Discussing Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, which mirrors Rule 37(b)(2)(A) of the Vermont Rules of Civil Procedure, the U.S. Supreme Court in Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 705-06 (1982), held that it does not violate due process to render a default judgment against a defendant who fails to comply with a pretrial discovery order. The Court found that "the preservation of due process was secured by the presumption that the refusal to produce evidence material to the

---

[3] SynEcology's retraction was prompted by Business RunTime obtaining copies of some of the emails from Mr. Kenney's Comcast account. The record does not reflect whether SynEcology ever produced any such emails.

administration of due process was but an admission of the want of merit in the asserted defense." Id. at 705 (quoting Hammond Packing Co. v. Arkansas, 212 U.S. 322, 350-51 (1909)). "Due process is violated only if the behavior of the defendant will not support the Hammond Packing presumption," and "[a] proper application of Rule 37(b)(2) will, as a matter of law, support such a presumption." Id. at 706.

¶ 23.    Here, SynEcology's discovery abuses go to the heart of the case: it was asked to produce all emails relevant to the merits of its claims, and it willfully failed to do so, and indeed, misrepresented their existence to the trial court. These repeated failures to produce evidence central to proving or disproving its claims easily meet the Hammond Packing presumption, and the trial court's dismissal does not, therefore, offend due process.

¶ 24.    SynEcology's argument that the trial court's dismissal was based on objectively erroneous premises is also incorrect. In its brief, SynEcology contends that its supplemental production on December 30, 2014 remedied prior insufficiencies. Specifically, SynEcology alleges that the thirty-eight emails referenced as missing in the contempt ruling were, to its "best knowledge," included in the documents produced on December 30, 2014. The Court finds no support in the record for these assertions. As stated above, the record does not reflect the number of emails produced on December 30, 2014, nor does it indicate the date, sender, recipient, contents, or subject lines of the emails included on the CD provided by SynEcology on that date. Furthermore, although SynEcology indicated that "[i]tems that are not being produced based on a claim of privilege shall be identified by way of a privilege log which shall be provided under separate cover," there is nothing in the record indicating that SynEcology produced a privilege log at any time following the December 30, 2014 discovery certificate. The trial court noted that because of SynEcology's flagrant disregard of discovery requests and its admission that it lied about the Comcast emails, it had become impossible to know whether there

10

were additional relevant documents improperly withheld.  Therefore, the assertion that the court was acting under objectively erroneous premises in dismissing the action is not supported by the record.  The discovery certificate did not inform the court of what had been produced and, like earlier discovery representations by Synecology, was facially incomplete in the absence of record evidence supporting the production of a privilege log concerning emails that were admittedly not produced.

¶ 25.  For these reasons, the trial court's decision satisfies the requirement for dismissal, outlined in Med. Ctr. Hosp. of Vt., Inc.  The trial court has broad discretion in imposing sanctions, and we will not disturb its findings absent a showing that discretion was abused or entirely withheld.  Id. 136 Vt. at 519, 394 A.2d at 1135.  Although dismissal is a severe sanction, on these facts we find that the trial court's exercise of discretion can be easily sustained.

¶ 26.  We disagree with SynEcology's claim that the dismissal of the action without a hearing on the motion for contempt was error.  In its brief, SynEcology suggests that the hearing on September 29, 2014 was devoted entirely to attorney O'Neill's motion for leave to withdraw, rather than the motion for sanctions, and that the trial court indicated that it would hold a second hearing on the motion.  At the hearing on September 29, following a discussion regarding the motion for leave to withdraw, Business RunTime stated, "we do have a motion for contempt that is fully briefed."  Following a discussion about whether to rule on that motion at the hearing, the trial court stated:

> [I] want to be fair to [SynEcology]. . . . I could do what [Business RunTime] is asking and just say I'm going to decide this motion now and whatever remedy I think is appropriate, I'll do before you get a new lawyer, but I would rather have you consult somebody else first.  So I am going to give you time to get another lawyer and let the other lawyer file something else before I rule on the motion.

11

The trial court then informed SynEcology that it would receive a standard form in the mail with the deadline to obtain counsel and file a notice of appearance. Following a discussion between the trial court and Mr. Kenney about this deadline, the trial court stated, "we definitely do need one thing from you though, Mr. Kenney, which is the mailing address that should be used for the hearing—the form that I just said we are going to send."

¶ 27. SynEcology now argues that the trial court intended that a hearing on the motion for contempt would precede any ruling. It bases this argument on the trial court's final remarks, when it stated, "the hearing—the form I just said we are going to send." When read in context, however, it is clear from the trial court's remarks that they were made in reference to the form indicating the deadline for filing anything in response to the motion for contempt, and not in reference to a hearing on that motion. As reflected by the record, neither party requested a hearing with respect to the motion for contempt pursuant to Rule 78(b)(2). See V.R.C.P. 78(b)(2) ("An opportunity to present evidence shall be provided, if requested. . . . In any case, the court may decline to hear oral argument and may dispose of the motion without argument."); Shaw v. Barnes, 166 Vt. 610, 610, 693 A.2d 710, 711 (1997) (mem.) (holding that civil rules give trial court discretion to decline oral argument on motions in all cases).

¶ 28. Despite the fact that neither party requested one, the trial court initially scheduled a hearing on the contempt motion. The trial court used the majority of that hearing to discuss the subsequently-filed motion to withdraw by Synecology's counsel, although the pending contempt motion seeking dismissal was also discussed. At the hearing, the trial court informed Synecology that before ruling upon the contempt motion, it would allow time for substitute counsel and supplemental pleading. This is exactly what the trial court did. Synecology's new counsel filed the supplemental pleading, but did not request a hearing on the motion. Rule 78(b)(2) authorizes a court to dispose of a motion without argument, and the decision to do so is

12

within the discretion of the court. Bandler v. Cohen Rosenthal & Kramer, LLP, 2015 VT 115, ¶ 11, ___ Vt. ___, ___ A.3d ___ ("The Vermont Rules of Civil Procedure give the trial court discretion in deciding whether to hear argument."). Error in the decision not to hold a hearing requires an affirmative showing the court abused or withheld its discretion. Id. ¶ 10. Based on the record, especially where neither party requested a hearing, that showing has not been made.

¶ 29. We leave for another day whether, under certain circumstances, a warning prior to dismissal may be required. Where, as here, the motion itself specifically seeks dismissal as a sanction, no purpose is served by any additional warning from a court that it is considering dismissal. Here, the trial court's order dismissing the complaint was in response to Business RunTime's motion for contempt, sanctions, and attorneys' fees. The first sentence of that motion put SynEcology on notice that the sanction of dismissal was being requested. That sentence provides:

> Defendant Business RunTime, Inc. . . . hereby move[s] this Court pursuant to V.R.C.P. 37(b) to hold Plaintiff SynEcology Partners L3C in contempt for failure to comply with this Court's May 22, 2014 compulsion order, and further move this Court to dismiss this case and for attorney's fees. (emphasis added).

It was clear from the motion that the court must, necessarily, consider whether to grant the requested relief. Further, SynEcology was given additional notice at the hearing on September 29, 2014, when Business RunTime's counsel reiterated that dismissal was being sought as a sanction. That SynEcology may not have felt dismissal was a likely outcome is far different than not knowing the issue was before the court.

¶ 30. Synecology's conduct regarding discovery, which the trial court's order describes, was sufficient to justify the animadversion of the court. It is clear from its discussion that the trial court lost faith in SynEcology's willingness to undertake a good faith effort to comply with the discovery orders or motions to compel. Although SynEcology argues that it was willing and

13

able to produce the Comcast emails and privilege log, the trial court had no reason to believe SynEcology would suddenly make good on its promises having failed to do so in the past.

 Affirmed.

FOR THE COURT:

_____

Associate Justice
