Filed 03/26/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 21-CV-02778

| | |
|---|---|
| STATE OF VERMONT,<br>    Plaintiff<br><br>v.<br><br>EXXON MOBIL CORPORATION, et al.,<br>    Defendants | DECISION ON MOTIONS |

## RULING ON DEFENDANTS' MOTIONS FOR INTERLOCUTORY REVIEW

The State brings this action against the gas/oil companies Exxon Mobil, Shell, Sunoco, Citgo, and some of their related entities, asserting violations of the Vermont Consumer Protection Act, 9 V.S.A. § 2453, et seq. In its December 11, 2024 Decision, this Court denied Defendants' motions to dismiss. Through two separate motions, Defendants now seek interlocutory review of the Court's ruling pursuant to Rule 5(b)(1) of the Vermont Rules of Appellate Procedure. The State opposes interlocutory review, arguing Defendants fail to demonstrate the issues raised meet the stringent requirements under the rule. For the reasons discussed below, Defendants' motions are DENIED.[1]

### Legal Standard

There are three requirements for interlocutory review: (1) the order or ruling must "involve[] a controlling question of law"; (2) there must be "substantial ground for difference of opinion" regarding that question; and (3) "an immediate appeal may materially advance the termination of the litigation." V.R.A.P. 5(b)(1); *see also* 12 V.S.A. § 2386; *In re Pyramid Co. of Burlington*, 141 Vt. 294, 301 (1982). Interlocutory appeals are considered an "exception to the normal restriction of appellate jurisdiction to the review of final judgment" because "[p]iecemeal appellate review causes unnecessary delay and expense, and wastes scarce judicial resources." *Pyramid*, 141 Vt. at 300. However, there is a "narrow class of cases" for which interlocutory review is advisable, as articulated by the requirements outlined in Appellate Rule 5(b). *Id.* at 301. Because that rule is based upon 28 U.S.C. § 1292(b) and F.R.A.P. 5, the "policies and rationales underlying the federal statute provide guidance for our construction of V.R.A.P. 5(b)." *Pyramid*, 141 Vt. at 301. The definitions of the criteria enumerated in Rule 5(b) are "not self-evident"; rather, they are deliberately vague so as to "inject an element of flexibility . . . . The

---

[1] In its discretion, the Court also denies Defendants' requests for oral argument on the motions. *See* V.R.C.P. 7(b)(5); *SynEcology Partners, L3C v. Bus. RunTime, Inc.*, 2016 VT 29, ¶¶ 27-28, 201 Vt. 424.

three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." *Id*. at 301-02 (quoting 16 Wright & Miller, *Fed. Prac. & Proc.* § 3930, at 156 (1977)). "A failure to satisfy any one of the V.R.A.P. 5(b) criteria nonetheless precludes certification and appellate decision; appeal in such a case would contradict the purpose of V.R.A.P. 5." *Id*. at 302. "[T]he trial court has discretion in granting or denying interlocutory appeal." *State v. Haynes*, 2019 VT 44, ¶ 33, 210 Vt. 417.

Discussion

Defendants have identified three issues that they claim are "controlling question[s] of law":

> 1.      Whether a statement that does not offer any product for sale or otherwise refer to products available for purchase by Vermont consumers is nonetheless made "in commerce" under the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. § 2451 et seq., if made by a corporation and allegedly made "for the purpose of maintaining sales" with a profit motive.
>
> 2.      Whether a statement that does not propose a commercial transaction or that does more than propose a commercial transaction constitutes commercial speech under the First Amendment to the United States Constitution.
>
> 3.      Whether a VCPA claim brought by the Attorney General on behalf of the State accrues when the State is on inquiry notice that an act or practice is deceptive.

Defs.' Mot. at 1. Additionally, the Sunoco Defendants have identified two additional issues that they also claim to be controlling questions of law:

> 1. Whether a company alleged to act only as a wholesale supplier – selling its products only to other distributors or retailers for their resale, and not to Vermont retail customers for their own use or benefit – is a proper defendant in a claim brought under the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. § 2453 et seq.
>
> 2. Whether the Court has personal jurisdiction over the Sunoco 12(b)(2) Defendants.

Sunoco's Mot. at 1 (footnotes omitted).[2]

---

[2] All five Sunoco Defendants seek review of the first question; only the three Sunoco Defendants who moved to dismiss on Rule 12(b)(2) grounds seek review of the second question.

As the State points out in its briefing, some of the questions framed by Defendants misstate the issues actually decided by the Court in ruling on the motions to dismiss. Such distortion would seem to provide good cause under Rule 5(b)(1) to deny interlocutory review on those questions. *See White Current Corp. v. Vermont Elec. Co-op., Inc.*, 158 Vt. 216, 222 (1992) (noting that, on interlocutory appeal, the Supreme Court will not "entertain an issue neither presented by properly certified questions nor otherwise raised by the proceedings below or the order appealed from"). But in any event, Defendants are not entitled to interlocutory review because each of their proposed questions for appeal do not satisfy one or more of the Rule 5(b)(1) criteria.

The first question, involving the "in commerce" requirement, is plainly a question of fact, notwithstanding Defendants' attempt to reframe it as a question of law. *See Pyramid*, 141 Vt. at 304 ("Simply phrasing a question as turning on a matter of law does not create a question of law for purposes of V.R.A.P. 5(b)."). In moving to dismiss, Defendants argued that the alleged deceptive acts (particularly the climate science disinformation and greenwashing campaigns) did not take place in the "consumer marketplace" as required by the Consumer Protection Act and the applicable case law, and are therefore non-actionable. The Court rejected this argument, concluding that the alleged deceptive acts "need not have occurred in the context of a specific consumer transaction," and that the Complaint adequately alleged that the acts took place "in commerce":

> In any event, the State sufficiently alleges that the deceptive acts took place in commerce. The allegations all relate to Defendants' ongoing business of selling gasoline products, in which they hold themselves out to the public, and articulate a "potential harmful effect on the consuming public." *Id*. The alleged "greenwashing" and climate science denial campaigns could reasonably be viewed as deceptive advertising, a prime target of the Consumer Protection Act. It is entirely plausible that false assertions about the science of climate change, particularly if contrary to Defendants' own internal studies, were made for the purpose of maintaining sales of Defendants' products in the face of increasing negative attention. One can reasonably infer from the Complaint that there was an obvious profit motive behind Defendants' allegedly deceptive statements – to increase gasoline sales.

Decision on Defs.' Mots. to Dismiss at 10, 11. Whether, as the Complaint alleges, Defendants' alleged deceptive acts are advertisements and, thus took place in the consumer marketplace, involves factual questions to be explored through discovery. *See* Wright & Miller, 16 *Fed. Prac. & Proc. Juris.* § 3930 (3d ed.) (noting that "ordinarily it seems better to keep courts of appeals aloof from interlocutory embroilment with the factual content of the record").

Moreover, Defendants have failed to demonstrate a "substantial ground for difference of opinion" on this question. Defendants' suggestion that a statement made by a business must explicitly mention a product or service for that statement to be considered "in commerce" is

3

unconvincing. On the contrary, companies routinely conduct advertising through mere indirect references to their product(s), and a company's brand by itself can certainly be a strong motivator to buy (or not to buy) that company's product. According to Defendants, a business could display a blatantly false advertisement, and yet escape liability under the Consumer Protection Act so long as that advertisement does not explicitly reference a product or service that it sells. Given the broad, remedial purpose behind the Act, such logic is unavailing.

The cases Defendants cite in support of their contention do not compel a contrary result. In *Terry*, for instance, the Supreme Court held that the jury instruction regarding the tenants' Consumer Protection Act claim was "overbroad in two respects – in not including the element of materiality in defining a deceptive act, and in not requiring that landlords knew or should have known of the alleged defect that they failed to disclose and that led to the 2008 fire." *Terry v. O'Brien*, 2015 VT 132, ¶ 26, 200 Vt. 511. The Court's reference to "the product or service offered" in explaining the "materiality" element of a deceptive act is in no way a pronouncement that liability under the Consumer Protection Act requires that the defendant explicitly mentioned a product or service. *Id*. ¶ 28. *Foti Fuels* similarly fails to provide a "substantial ground for difference of opinion" for the same reasons explained in the Court's ruling on the motion to dismiss. And in the recent New York case, the trial court dismissed greenwashing claims as not sufficiently "in commerce" based on New York's much narrower statutory definition of "in commerce"; in fact, the court cited and distinguished this Court's December 11, 2024 Decision. *See City of New York v. Exxon Mobil Corp.*, No. 451071/2021, 2025 WL 209843, at \*12-13 (N.Y. Sup. Ct. Jan. 14, 2025). Thus, the Court concludes that no reasonable appellate judge would a "vote for reversal of the" Court's denial of the motion to dismiss. *In re Pyramid Co.*, 141 Vt. at 307.

The First Amendment issue likewise does not present a controlling question of law because the Court's ruling turned on questions of fact:

> In drawing every reasonable inference from the Complaint in the State's favor, as the Court must on a motion to dismiss, the alleged opinion pieces denying climate science and greenwashing campaigns can reasonably be viewed as having been "asserted for the purpose of persuading the public to purchase the product." *Philip Morris*, 566 F.3d at 1143. Moreover, the State alleges that the climate science disinformation statements were "advertorials," or advertisements disguised as opinion pieces. *See* Compl. ¶ 88. That is a factual issue that the Court cannot resolve on a motion to dismiss.

Decision on Defs.' Mot. to Dismiss at 17. During discovery, the parties will have the opportunity to explore evidence that demonstrates whether the alleged statements were actually asserted for the purpose of persuading the public to purchase the product and whether the opinion pieces were in fact "advertorials."[3]

---

[3] Defendants further contend that under *Bolger*, this Court's "analysis was erroneous because it treated a single factor – alleged economic motivation – as dispositive," and that "the State does

4

The statute of limitations issue is similarly not a controlling question of law. Whether the proper party subject to inquiry notice of a potential Consumer Protection Act cause of action is the State or Vermont consumers, it remains a fact question whether the *Kivalina* complaint put them on notice in 2008. Defendants also contend that the State was on inquiry notice via its 2003 lawsuit against the EPA but, as the Court explained in its Decision, the action rests not on the link between fossil fuel emissions and climate change alone, but also on "Defendants' alleged deceptive acts to misrepresent and conceal that link that were contrary to Defendants' own undisclosed studies." Decision at 8; *see also* Compl. ¶¶ 43, 55, 82.[4] That issue is ripe for discovery. There are also no substantial grounds for difference of opinion on this issue. As discussed in the Court's Decision at 9, Defendants' reliance on the Delaware and Maryland cited is misplaced. Moreover, the recent New York case is inapposite because there, the City of New York stipulated that it did not seek civil penalties for conduct that had occurred outside the three-year limitations period, and the court then addressed and rejected a "continuing violation" argument that was not raised in the instant case. *See City of New York v. Exxon Mobil Corp.*, 226 N.Y.S.3d 863, 883-84 (N.Y. Sup. Ct. 2025).

Turning to Sunoco's wholesaler issue, while this arguably could be framed as a question of law, Defendants have failed to establish substantial grounds for difference of opinion. Given the broad reach and remedial purpose of the Consumer Protection Act, Defendants' reliance on *Foti Fuels* and attempts to distinguish *Elkins* do not suggest that a reasonable appellate judge could reach a different conclusion on this issue. *See, e.g.*, *In re Pyramid Co.*, 141 Vt. at 306 ("V.R.A.P. 5(b) does not supersede the trial court's authority and responsibility to decide difficult legal issues. Trial courts should not be bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression." (quotation omitted)).

As for Sunoco's personal jurisdiction argument, this is again a clear question of fact that must be explored through discovery before any appellate review. As the Court explained in its December ruling: "While a factual dispute may remain as to whether personal jurisdiction exists as to some of the Sunoco Defendants, the State has demonstrated facts which would support a

---

not point to a single sentence of the Court's ruling addressing the other two factors that *Bolger* considered." Defs.' Reply at 17. Not so. As the Court explained in its ruling, the three *Bolger* factors include "whether the statements are advertisements, whether they reference a specific product, and whether there was an economic motivation." Decision on Defs.' Mot. to Dismiss at 17. Contrary to Defendants' claims, the Court addressed all three factors in its analysis. For example, in addition to the alleged economic motivation, the Court wrote: "Moreover, the State alleges that the climate science disinformation statements were 'advertorials,' or advertisements disguised as opinion pieces." *Id*. (citing Compl. ¶ 88).

[4] Defendants argue that the existence of undisclosed studies (that were eventually revealed) is irrelevant. *See* Defs.' Reply at 12, 18. They are correct, of course, that Vermont's Consumer Protection Act contains no intent element. While that means that a defendant to a consumer protection action cannot use its lack of intent as a defense, it does not mean that a party's intent is not otherwise important or relevant to a claim or part of the State's case. Indeed, a party's intentional deception would likely provide more reason to find that consumers would be deceived. Fact issues regarding the alleged undisclosed studies should be sorted out in discovery before an appellate court can rule on this issue.

finding of jurisdiction, and the Court must accept those facts as true as this stage of the case." Decision at 7 (quotation omitted). Thus, the exact scope of the State's alleged jurisdictional facts as to the Sunoco Defendants must be explored in discovery before an appellate ruling is appropriate. Moreover, Sunoco has failed to demonstrate any substantial grounds for difference of opinion. If the Sunoco Defendants believe they have a strong argument for lack of personal jurisdiction, it may be appropriate for them to request that limited jurisdictional discovery be conducted prior to any discovery on the merits.

Lastly, as to virtually all the questions raised for interlocutory review, the third prong under V.R.A.P. 5(b)(1) – "an immediate appeal may materially advance the termination of the litigation" – also is not satisfied here. While in some cases, an interlocutory appeal that cannot result in a termination of the entire action might fit within Rule 5(b)(1), the third prong is more properly found to be satisfied when deciding an issue on appeal could end the entire case. *See, e.g., State v. Meta Platforms, Inc.*, Entry Order, 24-AP-295 (Vt. Dec. 2024) (permitting interlocutory review of personal jurisdiction question that could potentially terminate entire litigation, but denying review as to other questions); *Skiff v. S. Burlington Sch. Dist.*, 2018 VT 117, 208 Vt. 564.[5] Here, even if the Court allowed interlocutory review on all questions presented, that would not end the litigation. Moreover, the Court concludes that the speculative nature of the potential reduction in discovery that might result from a successful interlocutory appeal in this case would not "materially advance the termination of the litigation" under Rule 5(b). Finally, to the extent that an immediate appeal of the Sunoco Defendants' personal jurisdiction question might materially advance the termination of the litigation as to those specific defendants, the Court finds Sunoco Defendants have not satisfied the other requirements of Rule 5(b), as discussed above.

<u>Order</u>

For the foregoing reasons, Defendants' Motions for Interlocutory Review (Mots. # 28 and 29) are DENIED.

Electronically signed on March 26, 2025 at 1:31 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

---

[5] *Meta* and *Skiff* also present examples of pure questions of law that are much more appropriate for interlocutory review than the factual questions presented here.