NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 54

Nos. 2018-162 & 2018-257

| | |
|---|---|
| Dagney Trevor | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| | |
| Icon Legacy Custom Modular Homes, LLC, et al. | January Term, 2019 |

Robert A. Mello, J.

Stephen D. Ellis of Paul Frank + Collins PC, Burlington, for Plaintiff-Appellee/
 Cross-Appellant.

Allan R. Keyes of Ryan Smith & Carbine, LTD, Rutland, for Defendants-Appellants
 Icon Legacy Custom Modular Homes, LLC and Icon Legacy Transport, LLC.

Gregory A. Weimer and Adrienne Shea of Lynn, Lynn, Blackman & Manitsky, P.C., of
 Burlington, for Defendants-Appellees Osborne Construction, LLC, Paul Osborne.

Richard H. Wadhams, Jr. of Pierson Wadhams Quinn Yates & Coffrin, LLP, and Maxwell
 Krieger, Burlington, for Defendant-Appellee Merusi Builders, Inc.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **SKOGLUND, J.** This appeal arises from the sale and construction of a new modular home that suffered from significant deficiencies. Appellants—Icon Legacy Custom Modular Homes, LLC and Icon Legacy Transport, LLC—challenge a series of trial court orders in favor of appellees—Dagney Trevor, Merusi Builders, Inc., Osborne Construction, LLC, and Paul Osborne. For the reasons stated below, we affirm in part and reverse in part.

I. Facts and Procedural History

¶ 2. Because there are many parties involved in this appeal, we identify them, their role in the case below, and their role in the current appeal. Dagney Trevor (Trevor) is the purchaser of the defective modular home, the plaintiff in the suit below, and appellee and cross-appellant in the current appeal. Icon Legacy Custom Modular Homes, LLC (Icon Legacy) and Icon Legacy Transport, LLC (Icon Transport) are the manufacturer and transporter of the defective modular home purchased by Trevor, defendants in the suit below, and appellants in the current appeal.[1] Osborne Construction, LLC (Osborne Construction) and Paul Osborne (Osborne) are collectively the contractor involved in the assembly of the defective modular home, two of the defendants in the suit below, and appellee in the current appeal. Merusi Builders, Inc. (Merusi) is a subcontractor involved in the assembly of the defective modular home, one of the defendants in the suit below, and appellee in the current appeal. And, even though they are not parties in the current appeal,[2] we identify, for clarity's sake, Vermont Modular Homes, Inc., David Curtis, and Blane Bovier as Icon's Vermont-based "approved builders" and as three of the defendants in the suit below.

¶ 3. The facts of this case are relatively simple. In 2015, Trevor purchased an Icon Legacy Custom Modular Home to replace her home, which she had lost in a fire the previous year. Icon's communications with Trevor relating to the design, specifications, sale, delivery, and installation of the home were primarily through Icon's "approved builders," Curtis and his company, Vermont Modular Homes. During the sale of the home, Curtis communicated with Icon's employees, who in turn prepared drawings, price lists, and other marketing material for Curtis to provide to Trevor. Once Trevor bought the home, it was assembled by Osborne

---

[1] We will refer to Icon Legacy and Icon Transport together as "Icon" where a distinction between the two is not necessary, which will be the majority of this opinion.

[2] As explained in further detail below, Trevor dismissed her claims against Vermont Modular Homes, Curtis, and Bovier prior to trial.

Construction and Merusi in their capacities as contractor and subcontractor. The home sustained significant water damage during a rainstorm when water entered the home before the roof installation was complete. Other structural defects emerged after Trevor moved into the home. Although Icon and Vermont Modular Homes repaired some of the damage, major defects relating to both the water damage and alleged improper construction remained in the home.

¶ 4. The procedural history, on the other hand, is relatively complex. Trevor filed suit against Icon Legacy, Icon Transport, Vermont Modular Homes, Curtis, Bouvier, Osborne Construction, Osborne, and Merusi. Icon and Vermont Modular Homes filed suit as cross-claimants, seeking indemnification, among other things, against Osborne Construction, Osborne, and Merusi. And Curtis and Bouvier filed suit as a cross-claimants against Osborne Construction, Osborne, and Merusi.

¶ 5. The parties created, and the court approved, the first discovery-schedule order in early 2016, and then the amended discovery-schedule order in December 2016. The second order set a deadline of April 1, 2017, for discovery to be completed, the case to be ready for trial, and all pretrial motions to be filed, except those based on circumstances that arose after the cut-off date or a motion to dismiss for lack of subject matter jurisdiction.

¶ 6. In February 2016, Icon sent Trevor a letter with a flash drive enclosed "with the project files maintained by Icon" and noted that it would email any additional documents it located. The following day, Icon responded to Trevor's interrogatories and requests for production, and indicated that all relevant and discoverable documents would be produced for inspection and copying at Icon's office. These responses were signed by Icon's sales manager, not by an attorney of record as required by Vermont Rule of Civil Procedure 26(g).

¶ 7. On December 9, 2016, Trevor served Icon with a notice of deposition pursuant to Vermont Rule of Civil Procedure 30(b)(6), specifying Burlington, Vermont, where all attorneys of record had their offices, as the location for the deposition. Icon moved for a protective order to

3

permit its designees to appear remotely from Icon's headquarters in Pennsylvania. In support of its motion, Icon submitted affidavits from Icon's Pennsylvania-based general counsel and Icon's Rule 30(b)(6) authorized agent. The authorized agent stated that he "was involved in assembling the documents to be produced by Icon in this case" and that "[t]here [were] very few documents in this case involving Icon." General counsel stated that it was "aware that the documents produced in discovery [had] been exchanged electronically" and that "it [would] be an easy matter for . . . Icon's corporate designees to follow along with any questioning as to documents." The court granted Icon's motion for a protective order and the depositions were conducted remotely.

¶ 8. On April 21, 2017, after Icon's 30(b)(6) depositions were complete and the deadline set by the discovery order had passed, Icon's local Vermont counsel sent a letter purporting to be a belated Rule 26(g) certification for Icon's 2016 responses to Trevor's discovery requests. In response, Trevor asked Icon to supplement its prior document production with all Icon emails having any bearing on the matter as well as any other responsive documents. Icon never responded. Instead, on July 14, 2017, Icon filed a motion for summary judgment, and on August 3, 2017, Icon's local counsel wrote a letter stating, "I hereby certify pursuant to V.R.C.P. 26(g) that Icon has provided all documents responsive to [Trevor]'s Request for Production to the best of my knowledge." The trial court struck Icon's motion for summary judgment on the ground that it was filed in violation of the discovery order and Vermont Rule of Civil Procedure 56(b).

¶ 9. The trial court scheduled the jury draw and set the case for trial in March 2018, with a final pretrial conference on November 1, 2017. After the pretrial conference, Icon moved for reconsideration of the court's order striking its motion for summary judgment, which the trial court denied on December 8, 2017.

¶ 10. On December 12, 2017, Icon produced 111 pages of additional documents, which it represented had been "recently uncovered," though some of the documents, on their face, appeared to contradict that statement. After this production, Trevor moved for spoliation

4

sanctions. On January 11 and 18, 2018, before the court ruled on Trevor's first motion for sanctions, Icon produced over 3300 pages of additional documents in conjunction with its opposition to Trevor's motion for spoliation sanctions. Trevor then filed a second motion for sanctions on January 25, 2018.

¶ 11. Icon's responses to Trevor's sanction motions admitted that there was "no excuse" for Icon's failure to produce all requested documents in discovery and represented that Icon's local counsel had been "communicating with Icon's management team and IT personnel and urging Icon to conduct further investigation into whether it had produced all that [Trevor] had requested long before" the court struck Icon's summary judgment motion. Later in the proceedings, Icon's local counsel explained that Icon knew about the documents, stating that initially "they chose not to turn those over," but eventually "did so after they were implored to turn over everything that they had."

¶ 12. The trial court issued two written orders regarding Trevor's motions for sanctions. In its order on the first motion, the trial court sanctioned Icon by excluding the 111 documents disclosed on December 12 and noted that it found Icon's characterization of its conduct as mere oversight unpersuasive.

¶ 13. In its order on the second motion, the trial court accepted that the failure to disclose did "not appear to be with Icon's local counsel," but found that "Icon [did] not come forward with an explanation for how it could have allowed its attorneys to certify pursuant to V.R.C.P. 26(g) that Icon had produced all documents responsive to [Trevor]'s discovery requests, when it very obviously had not." The court further explained that "Icon [had] provided no information to the court as to what, if any, efforts its officers and employees [had] made over the past two years to locate, identify and produce documents requested in the course of discovery" and made no effort "to refute the inference . . . that Icon's failure to produce these documents until two months before trial was intentional, rather than merely negligent." The trial court was "convinced that Icon

5

blatantly disregarded its discovery obligations, and deliberately withheld responsive discovery until almost two years after it was due, in the hope that it would win its summary judgment motion and never have to produce them at all." It also noted that it "appear[ed] that Icon produced the latest batch of documents in January 2018, in an effort to avoid the spoliation sanctions that [Trevor] had requested in her first motion for sanctions, which she had filed the month before." The trial court found that the delays had prejudiced Trevor and undermined her ability to prove her claims at trial because it was "unreasonable to expect" that Trevor's counsel could "adequately digest nearly 3500 pages of newly-discovered documents in time to be able to use them meaningfully at the upcoming trial." It also found that the delayed production had deprived Trevor "of the ability to ever use them in any depositions or to ever make them available for effective use by the expert witnesses whom they have retained and disclosed."

¶ 14. The trial court's second sanctions order therefore: (1) excluded the documents disclosed by Icon on January 11 and 18; (2) entered judgment by default against Icon on all of Trevor's claims of liability; (3) struck the affirmative defenses that Icon had asserted as to Trevor's liability claims; and (4) ordered Icon to pay Trevor reasonable expenses, including attorney's fees, caused by its violations of its discovery obligations. It also clarified that its order on the second motion "shall not preclude Icon from: defending itself at trial against [Trevor]'s claim that Icon's acts and omissions caused her to suffer the damages that she alleges she has incurred; defending itself at trial against [Trevor]'s claim for punitive damages; or pursuing its indemnity claims at trial."

¶ 15. Icon filed a motion to reconsider with a request that the court hold an evidentiary hearing. It had not made this request prior to the court's second sanctions order. The trial court denied Icon's motion to reconsider and to hold an evidentiary hearing based on Icon's offer of proof—it reasoned that even if it had conducted proceedings to hear Icon's proposed testimony, it still would have concluded "that Icon's conduct, coupled with the substantial prejudice that [it]

6

had caused to [Trevor], amount[ed] to the kind of gross indifference, flagrant bad faith, and callous disregard of the responsibilities counsel owe[d] to the court and to their opponents that justifies a litigation-ending sanction."

¶ 16. Prior to trial, Trevor dismissed her claims against Vermont Modular Homes, Curtis, and Bovier. This left Icon as the only defendant against whom Trevor brought a Consumer Protection Act (CPA) claim. See 9 V.S.A. § 2451. On the first day of trial, the court required that Trevor elect which of the two types of monetary recovery authorized by 9 V.S.A. § 2461(b) she would pursue—damages or "the consideration or the value of the consideration given by the consumer." The court explained that if Trevor elected the "consideration given" recovery, Icon would not be able to avoid liability by proving that the defective modular home had "residual value" and would not be entitled to a set-off for any payments made by the other defendants to settle Trevor's damages claims against them. In pursing the "consideration given" remedy, Trevor would be required to prove the amount of consideration she paid for the modular home, then Icon would have the burden of proving that it received less than the full amount. And further, if Trevor elected the "consideration given" remedy and dismissed all of her other claims against Icon, the court would dismiss Icon's indemnification cross-claims against Osborne Construction, Osborne, and Merusi, who had received none of the consideration and against whom Trevor had asserted no CPA claims. Trevor elected the "consideration given" remedy as her sole claim and remedy against Icon, along with exemplary damages as authorized by § 2461(b), and the court dismissed all of Trevor's other claims and Icon's indemnification claims against Osborne Construction, Osborne, and Merusi.

¶ 17. During trial, in order to prove that the amount it received was less than the total amount Trevor paid, Icon proffered additional new documents that had not been disclosed during discovery. Icon admitted that the documents fell squarely under Trevor's discovery requests and that they were not produced during discovery or the post-discovery disclosures. Icon's counsel

7

urged the court that the withholding was not intentional, but that it was a mistake due to "interdepartmental communications" within Icon. The trial court called attention to its second sanctions order, where it noted that it had "no confidence that Icon had produced everything it had" and concluded that "obviously, I was right" because "[i]t does seem that Icon produces things when they need it, not when they're told."

¶ 18. In response to these additional disclosures, the court found "that Icon's continuing failure to provide documents that had been requested two years ago had now compromised not only [Trevor]'s ability to prove liability, but also damages." Therefore, the trial court sanctioned Icon by precluding the use of the new documents and expanding the default to include Icon's liability for the full, undisputed amount of consideration Trevor paid for her modular home. This default meant that Trevor's claim for exemplary damages would be the only claim submitted to the jury.

¶ 19. At the close of Trevor's case, Icon filed a motion for judgment as a matter of law under Vermont Rule of Civil Procedure 50, which it renewed at the close of all the evidence. The motions argued only that the evidence was insufficient to support an award of exemplary damages. The trial court denied both motions.

¶ 20. The jury returned a verdict in favor of Icon on exemplary damages. The court discharged the jury and entered judgment against Icon for the uncontested amount of consideration given by Trevor, $173,137.41, plus Trevor's costs and attorney's fees. The court denied both parties' various post-judgment motions.

¶ 21. Trevor filed a preliminary motion for attorney's fees and costs, first seeking $10,241.32 in costs. Icon opposed $4232.35 of the costs amount, arguing that those expenses were not recoverable under Vermont Rule of Civil Procedure 54 because that portion consisted of: costs incurred to serve process upon parties other than Icon; costs for copies of documents needed for deposition designations used at trial; additional copying costs; and witness fees which lacked the

certification required by 21 V.S.A. § 1553. The trial court agreed that Trevor's costs under Rule 54 were limited to $6008.97 and excluded the contested $4232.35. However, it noted that the excluded $4232.35 might be recoverable as nontaxable costs in connection with Trevor's application for an award of attorney's fees and expenses but deferred "ruling on that issue until such time as [Trevor's] fee application is ripe for decision."

¶ 22. It appears that Trevor did not amend or refile a motion for attorney's fees and costs, instead resting on her preliminary motion, in which she sought two separate awards: (1) an award of $440,757.03 in costs and fees pursuant to the CPA claim and the trial court's judgment; and (2) an alternative award of $310,886.58 in costs and fees pursuant to the court's second sanctions order, requiring that Icon and Vermont Modular Homes pay Trevor's reasonable expenses, including attorney's fees, caused by their respective violations of their discovery obligations. Trevor made her request in the alternative, arguing that because Icon could challenge the judgment on the CPA claim on appeal, it was therefore appropriate to determine the attorney's-fee award under the sanctions order independent of the judgment on the CPA claim.

¶ 23. The trial court ultimately awarded Trevor $314,003 in attorney's fees plus $25,235.33 in expenses on her CPA claim. The expenses award included the $4232.35 which the court had excluded from Trevor's motion for costs. The trial court noted that Icon did not challenge any of Trevor's nontaxable expenses.

¶ 24. The trial court calculated the lodestar figure based on the hourly rates and the total hours Trevor's attorneys worked on the case. The trial court disallowed the fees associated with the time spent pursuing Trevor's claims against Osborne Construction, Osborne, and Merusi, as well as certain "redundant, excessive, and/or unnecessary work." It then analyzed whether the lodestar figure should be adjusted upward or downward. The court determined that a forty-percent downward adjustment was warranted because "[t]here was nothing particularly difficult, complex, or novel about the one claim on which [Trevor] obtained a judgment against Icon" and because

9

Trevor "prevailed on her CPA claim not on its merits but as a consequence of this court's decision to default Icon on account of its discovery violations." However, the court then determined that a thirty-percent upward adjustment was required based on "Icon's litigation conduct." The trial court reasoned that "Icon's violations of its discovery obligations in this case were so extreme as to warrant the entry of a default judgment against it" and that "[s]uch conduct on Icon's part was not only inexcusable; it also very significantly increased the burden of work that [Trevor]'s counsel had to do in this case."

¶ 25. The trial court also held that Trevor was entitled to an alternative award of attorney's fees pursuant to the court's second sanctions order. It concluded that Trevor was entitled to $100,000 in attorney's fees plus $20,073 in expenses, which represented the additional fees Icon's misconduct caused Trevor to incur.

¶ 26. On appeal, Icon argues that the trial court erred on multiple grounds. First, Icon argues that the default judgments against Icon should be reversed because: (1) the trial court erred in sanctioning both Icon Transport and Icon Legacy because any late production of documents was solely by Icon Legacy, which is a separate entity and party to the suit; (2) the trial court erred in concluding that there was a violation of the duty to supplement under Vermont Rule of Civil Procedure 26(e), which is limited to correction of a written response with new information, and that without a Rule 26(e) violation and without a violation of a specific prior order requiring supplementation, the court had no authority to sanction; (3) default is not a sanction available under Vermont Rule of Civil Procedure 37(c) for a breach of the duty to supplement when there was not a violation of a prior court order; (4) litigation-ending sanctions require special findings based on affidavits or evidence, representations of counsel are not a substitute for such required evidence, and bad intent cannot be presumed, but must be clearly shown; (5) the trial court's ruling is insufficient for this Court to determine that the trial court considered lesser sanctions and the public policy that favors disposition on the merits; (6) the default on damages was erroneous and

unwarranted; (7) the trial court applied an erroneous measure of recovery of the "consideration given by the consumer" under the CPA because the outcome resulted in a windfall for Trevor; and (8) the trial court abused its discretion in refusing to reconsider the severity of the sanctions without holding an evidentiary hearing.

¶ 27. Second, Icon argues for the reversal of the order dismissing its indemnity claims against Osborne Construction, Osborne, and Merusi because the trial court erred by basing the dismissal on the faulty theory that Icon could not, as a matter of law, obtain indemnity for liability to Trevor for return of consideration under the CPA.

¶ 28. Third, Icon argues that the judgment awarding Trevor attorney's fees and expenses must be reversed because the trial court erred: (1) by adjusting the lodestar amount upward thirty-percent due to Icon's litigation misconduct; (2) in its alternative award by finding that and amount of $100,000 in fees was caused by the discovery violations; (3) in its alternative award of all Trevor's expenses from February 16, 2016 through March 16, 2018 without a finding that these were solely caused by the discovery violation; and (4) in awarding $4232.35 in expenses first claimed in Trevor's reply memorandum.

¶ 29. Trevor filed a cross appeal in this matter to advance one argument. That is, if Icon is afforded a new trial on liability or damages, Trevor is entitled to a new trial on all claims and remedies on account of various asserted errors.

## II. Default Judgment Against Icon

¶ 30. Vermont Rule of Civil Procedure 37 "provides for sanctions of various degrees of severity. Their imposition is necessarily a matter of judicial discretion." John v. Med. Ctr. Hosp. of Vt., LLC, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978). This Court will not disturb such a discretionary decision "unless it is clearly shown that such discretion had been abused or withheld." SynEcology Partners, L3C v. Bus. RunTime, Inc., 2016 VT 29, ¶ 18, 201 Vt. 424, 144 A.3d 343 (quotation omitted). Notwithstanding the broad discretion given, when a trial court

11

imposes litigation-ending sanctions, "it is necessary that the trial court indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." John, 136 Vt. at 519, 394 A.2d at 1135. A litigation-ending sanction "cannot be imposed merely as punishment for failure to comply with the court's order." Id. Therefore, where a trial court finds that a party's conduct "evidenced flagrant bad faith and callous disregard of responsibilities counsel owe to the [c]ourt and to their opponents," this Court cannot substitute our "judgment for that of the trial court." Id. at 520, 394 A.2d at 1135 (quotation omitted). We will uphold the trial court's factual findings unless they are unsupported by the evidence or clearly erroneous. See, e.g., Hayes v. Mountain View Estates Homeowners Ass'n, 2018 VT 41, ¶ 13, __ Vt. __, 188 A.3d 678 ("A trial court's findings of fact must stand unless, viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support the findings." (quotation omitted)).

A. Treating Icon Legacy and Icon Transport as Distinct Parties for Sanctions

¶ 31. Icon argues that the trial court erred when it sanctioned both Icon Legacy and Icon Transport as a consequence of the delayed production of documents. Icon contends that Icon Legacy and Icon Transport are distinct entities, and thus Icon Transport should not be held responsible for, or sanctioned as a result of, the delayed production of documents because the delayed production was purely Icon Legacy's action. Trevor counters that this argument was not preserved for our appellate review, and furthermore that this claim is unsupported by the record below.

¶ 32. We agree that Icon did not preserve this argument below. There is nothing in the record indicating that Icon Transport raised, in either Icon's opposition to Trevor's motion for sanctions or in support of Icon's motions for reconsideration, the argument that Icon Transport should not be sanctioned for misconduct that was purely of Icon Legacy. Furthermore, even if the

argument had been preserved, we find the trial court did not abuse its discretion in sanctioning Icon Legacy and Icon Transport jointly. During the proceedings before the trial court, Icon never requested nor represented a distinction between the two entities. Indeed, the record supports the opposite. Throughout the proceedings below, Icon's counsel and other sworn discovery responses consistently referred to both entities jointly as simply "Icon." When producing the additional documents in December 2017 and January 2018, Icon's counsel represented that the documents were being produced by both Icon entities. Moreover, when attempting to defend the delayed productions, Icon's counsel apologized "for the production of discovery material so long after it was requested," and admitted that "[t]here [was] no excuse for Icon's failure to produce all of the requested information on time." Throughout Icon's response to Trevor's motion for sanctions, Icon's counsel did not attempt to distinguish between the two entities, but simply referred to them jointly as "Icon."

¶ 33.    In light of the record, we find that the trial court did not err when it did not make a distinction between Icon Transport and Icon Legacy—a distinction that Icon itself never made or requested—in the sanction orders.[3]

### B. Rule 26(e) Violation and the Trial Court's Authority to Sanction

¶ 34.    Icon next asks us to decide whether: (1) the trial court erred when it concluded there was a violation of the duty to supplement under Rule 26(e), which Icon argues is limited to correction of a written response with new information; (2) the trial court had the authority to sanction late disclosures as a Rule 26(e) violation when there was no previous court order requiring

---

[3]  Icon also argues that it was not Icon Transport's burden to specifically assert, before or after the trial court ruled, that Trevor did not sufficiently develop a record showing that Icon Transport, a separate entity, had committed a discovery violation. We disagree—it was clear from both Icon's opposition to Trevor's motion for sanctions and Icon's motion for reconsideration of sanctions that Icon presented itself to the trial court and its opponents as a single entity acting jointly, and thus Icon cannot expect the court to rule differently or its opponents to argue differently.

supplementation; and (3) Rule 37(c) authorizes default as a sanction for a breach of the duty to supplement under Rule 26(e). Trevor argues that Icon's responses were never correct and complete and thus Icon violated Rule 26(e)'s duty to supplement, and that the trial court had the authority to sanction late disclosures in the context of Icon's pattern of repeated delayed disclosures, regardless of whether Icon violated a court order specifically compelling disclosure.

¶ 35.    First, Icon argues that Rule 26(e) is limited to the correction of written responses with new information, and because its written response to Trevor's production requests—"[a]ll relevant and discoverable documents will be produced for inspection and copying at the offices of [Icon's] counsel"—was allegedly correct and complete when made and remained so thereafter, the trial court erred in finding Rule 26(e) violations. Icon asserts that its original response was and remained correct and complete because it stated that Icon agreed to make responsive documents available for inspection, and that the requested documents were all directly provided at some point in time.[4] And, because Trevor never filed a motion to compel demanding that Icon make available all documents for inspection at a specified time, and never came to, nor requested to come to, Icon's offices to inspect the documents and designate the ones Trevor wanted copied, Icon never had any reason to supplement or correct the written response. We conclude that the trial court did not abuse its discretion in finding that Icon violated Rule 26(e)'s duty to supplement.

¶ 36.    Rule 26 outlines the general provisions that govern discovery, explaining that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." V.R.C.P. 26(b)(1). Rule 26(e) creates an ongoing duty to supplement all discovery responses:

---

[4] Icon argued for the first time during oral argument that Rule 26(e) did not apply because Icon's discovery responses were not complete, and thus there was no duty to supplement. This argument has no merit—the record shows that at multiple times during the proceedings below, both Icon's representatives and counsel, through oral representations and purported Rule 26(g) certifications, certified that its production was complete.

A party who has responded to a request for discovery with a response that was complete when made is under a duty to supplement or correct the response to include information thereafter acquired with respect to the following matters if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing:

. . . .

(2) Any other prior response to an interrogatory, request for production, or request for admission.

(3) Any matter by order of any superior judge, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

¶ 37.   Rule 26(g) then requires that "[e]very request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney" and states that such a signature "constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is" made in conformity with the Vermont Rules of Civil Procedure, "not interposed for any improper purpose," and is "not unreasonable or unduly burdensome or expensive."

¶ 38.   In finding that Icon's December 2017 disclosure constituted a Rule 26(e) violation in its first sanctions order, the trial court considered the following history. Icon first responded to Trevor's requests to produce documents by stating that all documents were available for inspection and copying at its office. These responses were not signed by Icon's counsel as required by Rule 26(g), but instead were signed by Icon's sales manager. Then, Icon's Rule 30(b)(6) witnesses testified in a manner that raised questions as to whether Icon had properly complied with discovery requests and indicated that the documents were never actually compiled for inspection, as stated in its written response, but instead were produced in digital form on a flash drive, which Icon sent to Trevor. Later, Icon's counsel sent a letter acknowledging that it had never provided the

15

Rule 26(g) attorney certification and asserted that said letter was to be considered as the certification. Trevor responded the same day, asking Icon to supplement its prior document production. Icon did not respond to this request for supplementation, even after Trevor reiterated the request two months later, but instead filed a motion for summary judgment along with a Rule 26(g) certification from its counsel, stating, "Icon's representatives believe that they have already produced all the documents within Icon's possession, custody, and control that [Trevor] has requested Icon to produce." The trial court struck Icon's motion for summary judgment as untimely, and then denied Icon's motion to reconsider the ruling. Within days of the court's denial of Icon's motion for reconsideration, in December 2017, "pursuant to [its] <u>ongoing duty to supplement discovery</u>," Icon presented Trevor with over one hundred pages of additional documents it claimed were "recently uncovered." (Emphasis added.)

¶ 39. In the trial court's second sanctions order where it found that Icon's January 2018 disclosures were in violation of Rule 26(e), it considered the history above along with Icon's newly-disclosed documents, apology to the trial court and Trevor, and acknowledgement that "[t]here is no excuse for Icon's failure to produce all of the requested information on time."

¶ 40. The trial court did not abuse its discretion when it concluded that Icon had a duty to supplement under Rule 26(e) and had violated that duty when it belatedly disclosed over 3400 documents in December 2017 and January 2018. Icon's assertion that the documents it produced in December 2017 and January 2018 were available for inspection and copying at Icon's offices throughout the litigation, and thus Icon was under no duty to supplement, simply cannot be reconciled with the record before the trial court, or this Court on appeal. First, Icon admitted to its ongoing duty to supplement discovery under Rule 26(e) in its certificate of its December 2017 disclosure—an admission it seems to abandon on appeal. Second, Icon certified to the trial court and Trevor on multiple occasions that it had conducted the appropriate search and had produced all relevant documents in response to Trevor's initial document request and requests for

16

supplementation, pursuant to Rule 26(g), though these certifications were proven false through: Icon's delayed disclosures; Icon's Rule 30(b)(6) witnesses' testimony that neither a list of responsive documents, nor the documents themselves, had been compiled at its offices for inspection and copying; and Icon's own admission that, due to mismanagement, it did not conduct a thorough search for all responsive documents until January 2018. The record shows that Icon was aware that its initial response to Trevor's request for documents was "in some material respect incomplete or incorrect" and that "the additional or corrective information [had] not otherwise been made known to [Trevor] during the discovery process or in writing," and thus it was "under a duty to supplement or correct the response." V.R.C.P. 26(e). And, when it failed to do so until almost two and a half years after the initial disclosure was due, it violated that duty.

¶ 41. Second, Icon argues that the trial court erred when it imposed sanctions for the Rule 26(e) violations because there were no previous court orders compelling Icon to produce the documents at issue. We find no abuse of discretion. While Rule 26(e) permits a court to order supplementation, it does not require it. It states that a party, once it knows of incomplete or incorrect information, has a duty to supplement "[a]ny other prior response to an interrogatory, request for production, or request for admission" or "[a]ny matter by order of any superior judge, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses." V.R.C.P. 26(e)(2)-(3). And therefore, a Rule 26(e) violation may be present even when there is no court order compelling supplementation. It is each party's responsibility to supplement discovery when the party learns it is incomplete or incorrect, regardless of a court order. Courts cannot expect a party, that has received a certification from an opponent claiming a complete and accurate discovery response was made, to nevertheless move to compel discovery. A party cannot compel the discovery of documents and other unproduced responsive materials it has no reason to believe exist, based on the seemingly good-faith representation of its opponent.

17

¶ 42.    And third, Icon argues that Rule 37 does not authorize default sanctions in response to a Rule 26(e) violation without a violation of a prior court order.  Icon asserts that through the second sanctions order defaulting Icon on all Trevor's claims of liability other than punitive damages and ordering Icon to pay reasonable expenses caused by its violations, the trial court "used what could be called unregulated, inherent power to announce that the late supplementation and claimed violation of a rule in this case was equivalent to the repeated serious violations of court orders that [in another case] justified a litigation-ending sanction under Rule 37(b)(2)."  We disagree.

¶ 43.    Rule 37 provides for various degrees of sanctions for discovery violations.  Subsection (c)(1) of Rule 37 explains that "[a] party that without substantial justification fails to supplement responses as required by Rule 26(e) is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed."  Along with the exclusion of evidence, Rule 37(c)(1) also permits a trial court to "impose other appropriate sanctions," including the requirement to pay "reasonable expenses, including attorney's fees" and "any of the actions authorized under Rule 37(b)(2)(A), (B), and (C)."  Rule 37(b)(2)(C) permits a trial court to issue "[a]n order . . . rendering a judgment by default against the disobedient party."  We find nothing ambiguous about the cross reference's language—Rule 37(c)(1) authorizes a trial court to exclude the evidence at issue, and "[i]n addition to or in lieu of this sanction," it may also order the payment of reasonable fees or any of the sanctions authorized by Rule 37(b)(2)(A)-(C), which includes entering default judgment against a party.  We do not find a distinction, based on the presence of a violated court order, in the plain language of Rule 37 between the sanctions available for Rule 26(e) violations.

¶ 44.    Nonetheless, Icon asks this Court to interpret Rule 37(c)'s cross reference to Rule 37(b)(2)(A), (B), and (C) as limited to sanctions that are lesser than the exclusion of the evidence, instead of the full cross-referenced list.  To support its assertion that sanctions for a Rule 26(c)

18

violation are limited to the exclusion of evidence and lesser sanctions—therefore excluding default as an available sanction—Icon cites Smith v. Central Vermont Hospital, Inc., 2004 VT 113, 177 Vt. 640, 868 A.2d 665 (mem.), the Reporter's Notes of Rule 37, and a series of federal cases.

¶ 45.   In Smith, this Court noted that "[w]e have repeatedly observed that the purpose of liberal discovery rules is 'the prevention of surprise to one's opponents,' and have not hesitated to affirm the ultimate discovery sanction of exclusion when to do otherwise would frustrate this objective." 2004 VT 113, ¶ 13 (quoting White Current Corp. v. Vt. Elec. Coop., 158 Vt. 216, 223, 609 A.2d 222, 226 (1992)).   We find that this passing reference to the "ultimate discovery sanction" cannot be so broadly read as to preclude the more-severe sanctions expressly authorized "in addition to or in lieu of" exclusion by the plain language of Rule 37(c)(1).

¶ 46.   We also do not find support for Icon's argument in the Reporter's Notes of the 2002 Amendment of Rule 37.  The Reporter's Notes explain that Rule 37(c)(1) was added to specify "for the first time a sanction for failure to supplement responses as required by Rule 26(e)." Reporter's Notes—2002 Amendment, V.R.C.P. 37.  The Notes reference the Federal Advisory Committee's Note to the 2000 Amendment, through which analogous language was added to the federal rules, when explaining that the Vermont Amendment was necessary because "previously courts could rely on inherent power to sanction for failure to supplement, 'but that is an uncertain and unregulated ground for imposing sanctions.' " Id. (quoting Federal Advisory Committee Notes—2000 Amendment, F.R.C.P. 37).  And finally, the Notes add that "[t]he amendment to the Vermont rule is necessary to avoid the argument that failure to include this provision means that the rule does not permit sanctions for failure to supplement."  It is clear that the purpose of this amendment was not, as Icon asserts, to limit the sanctions available for Rule 26(e) violations to exclusion of evidence and lesser sanctions.  Instead, the Reporter's Notes reflect the Amendment's goal of clarifying that there are specific sanctions available for Rule 26(e), ranging from the

requirement to pay reasonable expenses and exclusion of the evidence, to the entering of default judgment.[5]

¶ 47. And, finally, Icon cites a series of federal cases to support its argument that Rule 37 requires a violation of a prior court order compelling discovery before litigation-ending sanctions may be imposed. We find no support among the cited cases for Icon's arguments. First, Icon cites Williams v. Alabama Department of Industrial Relations, 684 F. App'x 888, 895 (11th Cir. 2017) (per curiam), for the assertion that a party cannot "seek sanctions under that rule without a discovery order" because a default sanction "is not a self-executing sanction under any provision of Rule 37." There, the court concluded that the lower court had not abused its discretion by denying the plaintiff's motion for sanctions because the defendant had not violated any court orders. Id. However, Williams was at a significantly different procedural moment than the litigation here. In Williams, the plaintiff filed the motion for sanctions in March 2014, months prior to the court's issuance of a general discovery order in July 2014. Therefore, there was no court order for the defendant to violate because the court had not yet set a discovery schedule. Here, both parties agreed to and the court signed the discovery-schedule order well before any of Icon's violations of that order.

¶ 48. Icon seeks further support for its argument by citing United States v. Certain Real Property Located at Route 1, 126 F.3d 1314 (11th Cir. 1997) and Hathcock v. Navistar International Transport Corp., 53 F.3d 36 (4th Cir. 1995). However, both of those cases are

---

[5] Icon's citation to Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006) misconstrues the court's holding. There, the court found that the lower court "err[ed] in its determination that preclusion is mandatory under Rule 37(c)(1)." Id. at 297 (quotation omitted). The court explained that the plain language of Federal Rule 37(c)(1) authorized "other, less drastic, sanctions" "in addition to or in lieu of" the preclusion sanction and therefore concluded that the preclusion of evidence under Federal Rule 37(c)(1) was not an automatic sanction, but instead was within the court's discretion to exclude evidence or to impose "other appropriate sanctions." Id. at 298 (quotation omitted). The court did not hold, as Icon asserts, that Federal Rule 37(c)(1) prohibits more severe sanctions, such as default.

distinguishable, and thus inapplicable. In <u>Certain Real Property</u>, the court examined the applicability of Federal Rule 37(d), which governs sanctions imposed when a party fails to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection. There, the court concluded that "the absence of either a motion to compel filed by [the party seeking discovery] or an order of the court compelling discovery, the violation of which might implicate Rule 37, rendered [the default sanction] inappropriate." 126 F.3d at 1318. We find the situation in <u>Certain Real Property</u> markedly different than the one here, and thus the requirement of an order compelling discovery is inapplicable. There, the sanctioned party had received a discovery request for production of documents but had entirely failed to respond to that request. Therefore, the party requesting the documents, and then the sanctions, knew that its discovery requests had not been complied with—it asked for documents and received no answer at all—and thus had the ability to move for an order compelling discovery. Here, on the other hand, Trevor made her discovery requests, and Icon represented to the court and to Trevor that it had complied with its discovery obligations by producing all responsive documents. As noted above, we cannot require a party to move to compel the discovery of documents and other responsive materials it has no reason to believe exist.

¶ 49. And in <u>Hathcock</u>, the court "agree[d] with the basic premise that a default sanction can, under certain circumstances, be an appropriate response to the violation of a Rule 16 [scheduling] order." 53 F.3d at 40. It went on to emphasize that "a party is entitled to be made aware of the drastic consequences" of its actions. <u>Id</u>. (quotation and alteration omitted). The <u>Hathcock</u> court reversed the lower court's imposition of default because it found that "the lack of any advance notice is especially problematic" because the sanctioned party had no communication with the court between the time the motion for sanctions was filed and the order of default was entered and because the court did not "issue a specific order to compel the discovery materials to which [the sanctioned party] objected." <u>Id</u>. at 41. In contrast, here Icon had the opportunity to be

heard and to understand that its behavior and discovery violations could cause drastic consequences. The court held a hearing on the second sanctions motion after it had entered its first, less-severe sanctions order which warned Icon of the nature of its behavior. The court entered a partial default through its second sanctions order, which should have made it abundantly clear to Icon that its discovery violations carried significant consequences. By the time the court expanded the default midtrial, Icon had been forewarned of the scope of possible consequences resulting from its behavior.

¶ 50. We conclude that a trial court has the authority, in certain circumstances like those in this case, to sanction "[a] party that without substantial justification fails to supplement responses as required by Rule 26(e)," V.R.C.P. 37(c)(1), by "striking out pleadings or parts thereof, . . . or rendering a judgment of default against the disobedient party," V.R.C.P. 37(b)(2)(C). Furthermore, we conclude that in situations as here—where a party simply cannot be expected to move for an order compelling discovery because it is relying upon representations that the requested material has already been provided—a court order compelling discovery is not a prerequisite for litigation-ending sanctions.

### C. Findings Required for Litigation-Ending Sanctions

¶ 51. Icon asserts that the requirement of special findings for litigation-ending sanctions is not satisfied unless the findings are based on affidavits or evidence in the record, and that representations of counsel are not a substitute for evidence. Icon argues that bad intent cannot be presumed and must be clearly shown by the proponent of the sanctions. Therefore, Icon posits, the trial court erred because it made "conclusory statements based on unsupported assertions of counsel" and improperly placed the burden on Icon to counter the court's presumption of bad faith.

¶ 52. This Court has long required a trial court that imposes litigation-ending sanctions to make "findings [of fact] so that this Court can properly perform its function in reviewing the exercise of that discretion." See John, 136 Vt. at 520, 394 A.2d at 1136 (reversing trial court's

22

sanctions order where there were no findings of fact resulting in "record [that did] not reveal what factors guided the court's discretion in dismissing plaintiff's complaint"). "In the absence of a finding of gross indifference, bad faith, or willfulness, coupled with substantial prejudice to the adverse party, a less drastic sanction should be used." Id. at 520, 394 A.2d at 1135. When we review those findings, this Court cannot substitute our "judgment for that of the trial court." Id. (quotation omitted). And, we will uphold the trial court's factual findings unless they are unsupported by the evidence or clearly erroneous.[6] See, e.g., Hayes, 2018 VT 41, ¶ 13.

¶ 53. First, Icon argues that the trial court was required to presume good faith and accept Icon's innocent explanation for its delayed production and thus should have denied Trevor's motions for sanctions because she submitted no affidavit of a witness with knowledge of deliberate, bad-faith concealment. However, Icon never asserted that Trevor had the burden of proof on this issue—instead, Icon attempted to provide a substantive justification for its conduct and demonstrate that its violations were harmless, and thus apparently accepted the burden of proof. Because this argument was not presented below, we decline to address it now.[7] See, e.g., Wright v. Kemp, 2019 VT 11, ¶ 15, __ Vt. __, 207 A.3d 1021 ("To preserve an issue for appeal, a

---

[6]  Icon also argues that courts must apply a heightened standard because "the federal authorities under Rule 37 generally require the party seeking a default sanction to provide 'clear and convincing' proof," citing Washing Metropolitan Area Transit Commission v. Reliable Limousine Service, LLC, 776 F.3d 1, 4 (D.C. Cir. 2015) for support. Icon failed to preserve this argument for appellate review, and thus we do not address it here. See, e.g., Wright v. Kemp, 2019 VT 11, ¶ 15, __ Vt. __, 207 A.3d 1021 ("To preserve an issue for appeal, a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." (quotation and alteration omitted)).

[7]  We note that while Rule 37 does not explicitly allocate the burden of proof, its language—authorizing sanctions where a party "without substantial justification fails to supplement responses . . . unless such failure is harmless"—would suggest that it would be reasonable to allocate the burden of proving the failure to supplement to the proponent of the sanctions, and the burden of proving that the failure was "substantially justified" or "harmless" to the violator.

party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." (quotation and alteration omitted)).

¶ 54. Second, Icon argues that the trial court's findings were not properly based on evidence in the record, but instead were based solely on assertions of counsel. That is incorrect. In its first order for sanctions through which it excluded the documents disclosed in December 2017, the trial court found that "[t]he exhibits presented to the court strongly indicate that Icon either blatantly disregarded its discovery obligations, or deliberately withheld responsive discovery until almost two years after it was due." It then cited the undisputed record of the case, including testimony from the depositions of Icon's representatives, Icon's summary judgment motion, Icon's opposition to the motion for sanctions, and the recently disclosed documents themselves, to explain why it found Icon's explanation for its conduct—"mere oversight"—unpersuasive. The trial court also made sufficient findings that Trevor was prejudiced by the December 2017 disclosure. It reasoned that although some of the documents produced in December 2017 were previously produced by other defendants, Trevor was prejudiced because the newly disclosed documents "might reasonably prompt further investigations and depositions of the individuals involved" and because Trevor was "burdened with additional work in reviewing the new documents and trial preparation that a diligent attorney must conduct in the event that the court does not exclude the documents."

¶ 55. Prior to its second order for sanctions through which it excluded the documents disclosed in January 2018 and defaulted Icon on all of Trevor's claims of liability, the trial court reviewed the written arguments of both parties and held oral arguments on the motion. In its order, the court recounted the case's timeline described in its first order. The court noted that Icon apologized for its delayed production of responsive material, acknowledged that there was no excuse for its failure to timely produce all the requested information, and insisted that it did not intentionally and purposefully delay production but instead blamed its untimely production on

24

negligent mismanagement of its company's information. However, the trial court emphasized that although Icon apologized and conceded it had no excuse for its conduct, Icon did not provide, either in its written opposition or during the motion hearing, any "information to the court as to what, if any, efforts its officers and employees have made over the past two years to locate, identify, and produce documents requested in the course of discovery in this case." It also noted that Icon "did not refute the court's understanding of the timeline of events, nor did it address any of the specific examples referred to in the court's [first sanctions order] or attempt to explain how or why they had occurred."

¶ 56. The second sanctions order also found Trevor had been significantly prejudiced by the January 2018 disclosures. Although Icon argued that the newly produced documents were "largely irrelevant" to Trevor's claims, and therefore the prejudice to Trevor was minimal and would not prevent Trevor's counsel from competently preparing for trial, the trial court concluded that the delayed production "deprived [Trevor's] counsel of the ability to ever use them in any deposition or to ever make them available for effective use by the expert witnesses whom they have retained and disclosed." The court concluded that "[g]iven Icon's conduct to date, the court has little confidence that it has in fact produced all the discoverable material that are within its possession or control," and found that Icon had blatantly disregarded its discovery obligations.

¶ 57. Finally, when the trial court sanctioned Icon for the third time mid-trial by expanding default to include Trevor's damages and causation, it grappled with the newly produced documents, how they related with previously produced documents, and whether they revealed any new information to Trevor. The trial court found that "[i]t does seem that Icon produces things when they need it, not when they're told" and noted that it "stated [in its second sanctions order] that [it] ha[d] no confidence that Icon had produced everything it had, and obviously, [the court] was right." Icon did not dispute that the newly produced documents fell within the scope of Trevor's discovery request, but instead stated "a mistake was made by interdepartmental

25

communication." The trial court was not swayed by this excuse, and based on the timeline and record before it, it determined that Icon's latest disclosure was a continuation of Icon's bad conduct that had been examined and sanctioned in the previous two sanctions orders. The trial court also found that Trevor had been prejudiced—Trevor's counsel was "in the middle of trial, trying to try a case, and [was] continually receiving discovery that should have been provided before so he would know about it and instead of having to constantly change gears because of new information."

¶ 58.     In each of the sanctions orders, the trial court's findings were not based on improper assumptions or assertions of counsel, as Icon contends. Instead, they were compelled by careful consideration and reconsideration of the undisputed record, concessions, and the case's timeline, after affording Icon ample opportunity to be heard, and by reasonable inferences drawn from the timeline and Icon's failure to refute those inferences. In all three instances, the trial court made the required findings of "gross indifference, bad faith, or willfulness, coupled with substantial prejudice," and those findings were supported by the record.   John, 136 Vt. at 520, 394 A.2d at 1135. Therefore, we find no abuse of discretion.[8]

---

[8]  Icon also cites Vermont Rule of Civil Procedure 43(e) to support the argument that there was no basis for any finding of bad faith—no evidentiary hearing was held nor were affidavits offered, and therefore bad faith was not a fact clearly "appearing of record." Rule 43(e) states:

> Except as provided in Rule 78(b)(2), when a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition, or on a written statement, agreed to and signed by the parties or their attorneys.

Here, all of the facts supporting the trial court's findings of bad faith, or what the trial court described as Icon's "blatant disregard of its discovery obligations," and prejudice appeared "of record" and that record was cited in detail in the trial court's sanctions orders. Icon did not dispute the record below, but instead argued that the record did not warrant a finding of bad faith or prejudice.

D.  Consideration of Lesser Sanctions and Public Policy

¶ 59.    Next, Icon argues that the trial court's sanctions orders were insufficient for this Court to review because the trial court failed to give specific, reasoned explanations for rejecting sanctions lesser than default and failed to present clear consideration of the public policy that favors disposition of cases on their merits.[9]  Trevor counters that the trial court considered, and granted, lesser sanctions, proportionate to the actual consequences of Icon's misconduct, and that Icon's misconduct precluded a fair trial on the merits.

¶ 60.    Icon cites two D.C. Circuit Court cases to support its assertions that: (1) default judgment is the "sanction of last resort, to be used only when less onerous methods (for example, adverse evidentiary determinations or other issue-related sanctions) will be ineffective or

---

Further, Rule 78(b)(2) provides:

> An opportunity to present evidence shall be provided, if requested, unless the court finds there to be no genuine issue as to any material fact.  The request for an opportunity to present evidence shall include a statement of the evidence which the party wishes to offer.  In any case, the court may decline to hear oral argument and may dispose of the motion without argument.

In this case, although Icon did not request a hearing in opposition to either of Trevor's motions for sanctions, the trial court did conduct a hearing prior to issuing the second sanctions order.  Icon requested an evidentiary hearing in the form of a motion for reconsideration, for the first time, after the trial court entered the second sanctions order.  The trial court denied the motion based on Icon's proffer, explaining that if it had conducted proceedings to hear the offered testimony, there would have been no change to its conclusion "that Icon's conduct, coupled with the substantial prejudice that [it had] caused to [Trevor], amounts to the kind of gross indifference, flagrant bad faith, and callous disregard of the responsibilities counsel owe to the court and to their opponents that justifies a litigation-ending sanction."  We find no error.

[9] Icon also argues that the trial court erred because it did not consider issuing a continuance in response to Icon's delayed disclosures.  Icon did not argue for a continuance below.  Nor did Icon cite legal authority that would support the assertion that a trial court must consider a continuance, and make specific findings of its consideration of said continuance, before issuing default sanctions—the single case it did cite, S.E.C. v. McGinnis, No. 5:14-CV-00006, 2018 WL 1633592 (D. Vt. Apr. 2, 2018), does not support this conclusion.  Furthermore, a continuance would have rewarded Icon for its misconduct and further prejudiced Trevor by delaying the scheduled trial to "re-do" discovery, at considerable additional effort and expense, with no confidence that Icon could be trusted to comply fully with its discovery obligations.

27

obviously futile," Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (quotation omitted); and (2) to justify default judgment, a court must find "clear and convincing evidence of the predicate misconduct" and "provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings." Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1478 (D.C. Cir. 1995). Entering default judgment against a recalcitrant party is a drastic discovery sanction and is among the most severe, but this Court has never required a trial court to make special findings showing that it fully considered or exhausted lesser sanctions and that it took into account the public policy favoring the resolution of cases on their merits, as Icon attempts to argue.

¶ 61. Instead, when reviewing an order that enters a litigation-ending sanction against a party, this Court has repeatedly held that the record must "reveal what factors guided the court's discretion in" entering the sanction and that the trial court must "indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." John, 136 Vt. at 519, 394 A.2d at 1135. And therefore, "[i]n the absence of a finding of gross indifference, bad faith, or willfulness, coupled with substantial prejudice to the adverse party, a less drastic sanction should be used." Id. at 520, 394 A.2d at 1135. We have also held that "courts must consider the actual consequences that may arise from perceived discovery violations and consider less drastic responses to the exclusion sanction in the absence of any bad faith, prejudice to the parties, or unwarranted delay in the trial process." Smith, 2004 VT 113, ¶ 15 (emphasis added). Nothing in Smith, which mandates the consideration of sanctions less drastic than evidence exclusion in the absence of a finding of bad faith and prejudice, contradicts John or adds to the required findings mandated for the issuance of a default sanction therein.

¶ 62. Here, we find the trial court did as it was required. Not only did the court impose lesser sanctions prior to entering default, the trial court made sufficient findings of fact to allow

this Court to determine that its discretion was guided by legitimate considerations and was not abused.

¶ 63. In all three sanctions orders, the trial court made a sufficient "finding of gross indifference, bad faith, or willfulness, coupled with substantial prejudice to" Trevor. John, 136 Vt. at 520, 394 A.2d at 1135; supra, ¶¶ 53-57. The trial court then examined the actual consequences of Icon's misconduct, and not only considered, but ordered, lesser sanctions. In the trial court's first sanctions order, it precluded Icon from using the documents produced in December 2017, but deferred consideration of any further sanctions pending Icon's response to Trevor's second motion for sanctions. The second sanctions order precluded Icon from using the additional documents produced in January 2018, directed entry of default judgment against Icon on liability, struck Icon's affirmative defenses, and awarded Trevor reasonable expenses and attorney's fees. The trial court found, in light of Icon's history of misconduct, that "[t]hese sanctions are necessary and appropriate, not to punish Icon, but to redress the harm it had caused [Trevor] by its discovery violations, which have undermined her ability to prove her liability claims against Icon at the upcoming trial." However, the trial court still permitted Icon to contest Trevor's damages claims and declined to issue an adverse-inference instruction to the jury. The third sanctions order, which came mid-trial when Icon once again produced documents it admitted fell squarely under Trevor's discovery requests, precluded Icon from using the newly produced documents and extended the default sanction to include Icon's liability to the full, undisputed amount of consideration, but still permitted Icon to contest Trevor's claim for exemplary damages and declined to issue an adverse-inference instruction to the jury. In ordering the third round of sanctions, the trial court explained:

> [In my sanction order], I tried to limit the sanction to achieve the goal, not to punish a party but to remediate the harm done to the other party. And it seemed to the Court that it was clear that not disclosing nearly 3500 pages of documents until mid-January with a trial scheduled for March had clearly compromised [Trevor's]

29

ability to prove her liability claim against Icon. And so I fashioned a remedy limited to trying to remediate that problem by ruling that the default would only be to liability, not to damages or causation.

But it now appears that documents relevant to damages still have not been produced and are being produced now. . . .

But we're here in the middle of trial. [Trevor] has made various elections on the basis of discovery that she had received up to the time she made those elections. It would be unfair to allow [Icon] to present evidence now that wasn't disclosed in discovery when asked for. And [Trevor's counsel] has had to spend time that he would have spent preparing his client to testify today instead on this whole issue.

. . . .

[The] Court is satisfied that Icon's continuing failure to provide documents that had been requested two years ago has now compromised not only [Trevor]'s ability to prove liability, but also damages.

¶ 64. We find that the trial court did not abuse its discretion when it incrementally expanded and increased the severity of the ordered sanctions, from exclusion of the untimely documents to default, in light of a record that supports the trial court's findings of Icon's gross indifference, "flagrant bad faith and callous disregard of responsibilities counsel owe to the [trial court] and to their opponents," and prejudice to Trevor. SynEcology, 2016 VT 29, ¶ 19 (quotation omitted). And, although not required, the trial court's finding that Icon's misconduct prevented Trevor's ability to prove her liability and damages claims—i.e., have a fair trial on the merits of her claims—was sufficient to show that it considered this Court's strong preference of disposition on the merits.[10]

---

[10] Because we affirm the trial court's award of damages in the full amount of the consideration Trevor paid for the modular home on the basis of a default, which precluded Icon from raising defenses to Trevor's prima facie case, we need not address whether, upon proof that Icon had itself received less than the full consideration paid by Trevor, or that the modular home retained by Trevor has significant residual value, Icon would have been entitled to a reduction in the damage award.

30

E. Default on Liability for Full, Undisputed Amount of Consideration Given

¶ 65.    Icon argues that the trial court abused its discretion when it expanded the default to include Icon's liability for the full, undisputed amount of consideration given by Trevor, as opposed to only the portion of the consideration that Icon agreed it received.  Icon asserts that the trial court erred because Icon was never under a duty to disclose the documents it attempted to admit during trial and because the trial court "could not just accept [Trevor's] statement of damages in satisfying its obligations to [e]nsure that the damages were appropriate."  We find no abuse of discretion.

¶ 66.    The second sanctions order defaulted Icon on liability for all of Trevor's claims, and also struck all of Icon's affirmative defenses, but permitted Icon to contest damages.  Prior to trial, Trevor dismissed all her claims against Icon other than her CPA claim, so that the trial court would permit her to settle her non-CPA claims against Osborne Construction, Osborne, and Merusi.  Trevor's settlement with Osborne Construction, Osborne, and Merusi on those claims required the dismissal of Icon's crossclaims for indemnity, as explained below.  Infra, ¶¶ 77-82.  Therefore, moving into trial with only the CPA claim at issue, Trevor was required to elect among the two types of monetary recovery that the CPA permits: (1) damages; or (2) "the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer."  9 V.S.A. § 2461(b).

¶ 67.    In its memorandum on damages under the CPA, Icon accepted that Trevor sought the full amount of consideration—$173,137.41.  While Icon argued that Trevor could not elect the consideration remedy because her defective modular home was not without worth, it did not dispute the amount she paid.  During a hearing prior to trial, the court asked, "is the amount of consideration that Icon received a disputed issue, or is that known with certainty?"  Trevor responded that the parties knew what Trevor paid, but that she had not "been provided with any

31

evidence of how much of that was actually paid to Icon." Icon asserted that it "ha[d] witnesses . . . who can testify as to what Icon received," but the court asked: "Isn't the best evidence the check or payment that you received from—how can this be something that isn't easily proved with a document?" The trial court then instructed the parties that Trevor had the burden of proof to show how much she paid, in total, to Vermont Modular Homes, although it appeared to be uncontested, and Icon had the burden of proof to show how much of that total it received. Furthermore, the court concluded, and Icon agreed, that Icon had the burden "to establish the exact amount. Otherwise, it's going to be the full" $173,137.41. In reliance on the discovery Trevor had received, she settled her claims with the other parties, dismissed all but her CPA claim against Icon, and elected to pursue the "consideration given" recovery in lieu of damages.

¶ 68. During trial, Trevor questioned Curtis, an Icon-approved builder in Vermont, who testified that Trevor had paid approximately $172,000 for her modular home. On cross-examination when Icon asked Curtis how much of that total had been paid to Icon, Trevor objected based on the best evidence and hearsay rules. During a bench conference, Icon revealed that it had photocopies of two checks purporting to reflect the total amount Icon received but admitted that these documents had not been disclosed to the court or Trevor during discovery. While the court permitted Curtis to answer the question—he did not remember how much Icon received—the ruling was subject to further consideration of Icon's offer of proof. Trevor subsequently filed a motion to exclude the checks and requested that the court instruct the jury that Icon is liable for the return of Trevor's consideration in the full amount of $173,137.41.

¶ 69. On a hearing for this motion, Icon did not argue, as it does now, that it was under no duty to produce the documents during discovery, but admitted, "Yes, we definitely failed," and "It was a mistake, we regret it." And, when the court asked whether "these checks clearly fell within the scope of [Trevor's] discovery requests," Icon responded, "We do not dispute that." Icon explained that it had failed to produce the documents, not because it wasn't responsive to Trevor's

32

discovery request, but because Icon didn't realize that Icon would need them—"We never expected that we would have a burden of proving damages."

¶ 70. Therefore, we conclude that the trial court did not abuse its discretion when it expanded the default to include Icon's liability for the full, undisputed amount of consideration given by Trevor. The trial court did not simply "accept" Trevor's statement of damages. Icon conceded not only that the documents disclosed at trial fell squarely under Trevor's discovery request and that it "failed" and made a "mistake" that it regretted by not producing them, but also that Trevor sought the full $173,137.41 and that it understood that it had the burden to prove otherwise.

## F. Lack of Evidentiary Hearing

¶ 71. Icon contends that the trial court abused its discretion by refusing to reconsider the severity of the sanctions without holding an evidentiary hearing. Trevor, in response, notes that the trial court afforded Icon ample opportunity to be heard and argues that the trial court did not abuse its discretion by not holding an evidentiary hearing that was not requested.

¶ 72. In Icon's responses to Trevor's two motions for sanctions, Icon did not request that the trial court hold evidentiary hearings. Rather, in its response to Trevor's second motion for sanctions, Icon admitted that there was "no excuse for Icon's failure to produce all of the requested information on time" and seemingly conceded that Icon disregarded its local counsel's instructions and warnings with respect to its discovery violations. Nevertheless, the trial court scheduled a hearing on the sanctions. During the hearing on Trevor's second motion for sanctions, Icon did not request an opportunity to present evidence, but simply apologized again to the trial court, noted that "Icon takes responsibility for this matter" due to its "negligent management of Icon's information," and reiterated its argument that, although the timing "appears very suspicious," there was no intentional concealment.

33

¶ 73. Icon's first request for an evidentiary hearing and first offer of proof came mere days before trial in its motions for reconsideration of the first and second sanctions orders—"Icon urges the [trial court] to . . . set a 60-minute hearing to allow Icon to provide testimony from live witnesses who can explain that Icon's actions were negligent and not willful or flagrant"—though it did not produce affidavits of other information as to the anticipated substance of the testimony. On the same day as jury draw, the court held a hearing on Icon's motion for reconsideration. The court noted that it read the motion for reconsideration twice and asked Icon if it wanted to add anything that it did not include in the motion.

¶ 74. In response, Icon argued that one of the multiple sets of emails discussed in the second sanctions order—an email chain consisting of three emails—did not, in fact, have to do with Trevor's claims, and therefore Icon requested that the court reconsider its decision excluding those emails. Icon also reiterated that it should have "an opportunity to present witnesses to demonstrate that its failure to produce this information was due to negligence, that it was not intentional." The court responded by noting that Icon had not requested an evidentiary hearing or produced affidavits of potential witnesses and asked: "If we had a hearing now, who would testify and what would they say?" Icon explained that a representative from Icon "who was somewhat involved in the process" could testify that "there were emails that were available, that [Icon] knew of, that [it] simply thought were minor exchanges between Icon employees about . . . insignificant things that didn't go to the heart of the liability issues," but that it turned the documents over "after [it was] implored to turn over everything that [it] had." Trevor, in response, argued that Icon had not requested an evidentiary hearing until its motion for reconsideration, Icon's motion for reconsideration presented nothing that hadn't already been considered, and Icon offered no support for its attorney's assertion that Icon had, in fact, finally fully complied with its discovery obligations. The court denied the motion for reconsideration based on Icon's offer of proof, concluding that if it had conducted proceedings to hear the offered testimony, there would have

been no change to its conclusion "that Icon's conduct, coupled with the substantial prejudice that [it had] caused to [Trevor], amounts to the kind of gross indifference, flagrant bad faith, and callous disregard of the responsibilities counsel owe to the court and to their opponents that justifies a litigation-ending sanction."

¶ 75. Icon renewed its motion for reconsideration and again sought an evidentiary hearing, explaining: "Allowing Icon to present testimony to refute [Trevor's] claims that resulted in severely harsh, litigation-ending sanctions is warranted given the impact the [second sanctions order] now has on Icon's ability to present a defense at trial." Icon did not specify what allegations, facts, or representations might be addressed in an evidentiary hearing, other than offering similar testimony it had offered at the hearing on its first motion for reconsideration. The court denied the motion, noting that there was no affidavit accompanying the motion regarding proposed testimony and evidence.

¶ 76. "The trial court has discretion to decide a motion to reconsider and may dispose of such a motion without a hearing." Fed. Nat'l Mortg. Ass'n v. Johnston, 2018 VT 51, ¶ 8, __ Vt. __, 189 A.3d 567. And "[a]lthough generally favored, hearings are not mandatory for V.R.C.P. 59 motions, particularly where the moving party has failed to show prejudice from the lack of hearing." Rubin v. Sterling Enters., 164 Vt. 582, 588, 674 A.2d 782, 786 (1996). Here, even though Icon did not request an evidentiary hearing until its motion for reconsideration, the trial court provided Icon ample opportunity to be heard and various chances to provide offers of proof as to what evidence it would present at a dedicated evidentiary hearing. Furthermore, after hearing Icon's various proffers, the trial court noted that such evidence would not have changed the outcome of the sanctions orders or the motion for reconsideration, especially at that late point in the litigation. We find no abuse of discretion because not only did the trial court repeatedly hear Icon's proffers of additional testimony, but it also had seen evidence and procedural history, as the record reflected, that supported the imposed sanctions and did not support reconsideration. The

record before this Court makes it clear that the trial court soundly exercised its discretion in declining to hold an evidentiary hearing.

### III. Dismissal of Icon's Indemnity Claims

¶ 77.   Next, Icon urges this Court to find error in the trial court's dismissal of Icon's crossclaims for indemnity against Osborne Construction, Osborne, and Merusi, arguing that it was error to dismiss on the grounds that Icon could not, as a matter of law, obtain indemnity for liability to Trevor for return of consideration under the CPA.

¶ 78.   Prior to trial, Trevor elected to limit recovery sought from Icon to the return of consideration.  In response to this election, the trial court dismissed all of Trevor's other claims against Icon, leaving only her CPA claim, and dismissed Icon's indemnification crossclaims against Osborne Construction, Osborne, and Merusi, who had received none of the consideration and against whom Trevor had asserted no CPA claims.

¶ 79.   Icon asserts that the trial court "peremptorily dismissed the indemnification claims, without any evidence, based solely on [Trevor's] decision to limit the recovery sought to return of consideration."  Icon continues by arguing that "[t]he core allegations against Icon . . . that drew [it] into the lawsuit were based on wrongful actions of Osborne and Merusi after the home was delivered" and asserts that "[t]he essence of [Trevor]'s claim under the Consumer Protection Act is that she was damaged because she did not receive the house she was promised because of the water damage that occurred due to Osborne's misrepresentation that the roof was weatherproof" and that Trevor "alleged [that] Icon . . . [was] vicariously liable for these misrepresentations."  Therefore, Icon posits, Trevor's "pleading decision cannot preclude beyond doubt the existence of facts showing it equitable to shift the liability to another party."

¶ 80.   We disagree.  First, Icon's characterization of the "essence" of Trevor's claims mistakes and conflates her CPA claims and her common-law fraud claims.  The theory underlying the "core allegations" Icon refers to was not part of Trevor's CPA claims at all, but instead was

36

part of the common law claims Trevor dismissed prior to trial when she elected to pursue recovery of the consideration under the CPA as her sole claim and remedy against Icon.

¶ 81.  Second, Icon relies on Chapman v. Sparta to support its argument that the right of indemnification cannot be based on the way the injured party frames its pleadings.  167 Vt. 157, 160, 702 A.2d 132, 134 (1997) ("The mere allegations of the underlying complaint [which alleged the defendant was negligent] are not evidence of how the accident happened.").  This reliance is misplaced, as Chapman is inapplicable here.  When dismissing Icon's crossclaims for indemnity, the trial court stated: "by virtue of the default [on liability], it is established that Icon has . . . engaged in deceptive acts by making material misrepresentations or omissions, and that the representations and omissions made by Icon are the sort that could deceive a consumer."  The consequence of a default judgment is that "the factual allegations of the[] complaint . . . will be taken as true."  DeYoung v. Ruggiero, 2009 VT 9, ¶ 22, 185 Vt. 267, 971 A.2d 627 (quotation omitted).  Therefore, unlike in Chapman, the details of Trevor's complaint are no longer "mere allegations," but rather the truth of this case.

¶ 82.  Third, because indemnification "shifts the entire loss from one party to another, one who has taken an active part in negligently injuring another is not entitled to indemnification from a second tortfeasor who also negligently caused the injury."  White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 29, 742 A.2d 734, 737 (1999) (citation and emphasis omitted).  "[I]ndemnity is a right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." Morris v. Am. Motors Corp., 142 Vt. 566, 576, 459 A.2d 968, 974 (1982) (emphasis added); see also White, 170 Vt. at 29, 742 A.2d at 737 (recognizing same rule); Chapman, 167 Vt. at 159, 702 A.2d at 134 (recognizing same rule).  As a result of the default judgment, the allegations in Trevor's complaint that Icon directly violated the CPA in its own right are accepted as true, and on that basis, Icon is not entitled to indemnity because it was not without active fault as a matter

37

of law. Therefore, the trial court did not err when it dismissed Icon's crossclaims against Osborne Construction, Osborne, and Merusi because, as a matter of law, there was no basis for them.[11]

## IV. Attorney's Fees and Expenses

¶ 83. Trevor sought attorney's fees both in conjunction with her claim under the CPA and related to Icon's discovery violations and the second sanctions order. On the basis of the CPA, the trial court awarded Trevor $314,003 in attorney's fees plus $25,235.33 in expenses on her CPA claim. The expenses award included the $4232.35, which the court had excluded from Trevor's motion for costs. The trial court also held that Trevor would be entitled to an alternative award of attorney's fees pursuant to the court's second sanctions order in the event that Trevor's CPA claims did not withstand appeal. It concluded that Trevor was entitled to $100,000 in attorney's fees plus $20,073 in expenses, which represented the additional costs Icon's misconduct caused Trevor to incur.

### A. Lodestar Adjustments and Alternative Award for Discovery Violations

¶ 84. Icon argues that the trial court abused its discretion in calculating the award of fees under the CPA by approving a thirty-percent increase, or $104,668, in the lodestar figure due to Icon's litigation misconduct. Icon also argues that the trial court erred in its alternative award when it found that Icon's discovery violations caused Trevor $100,000 in fees and when it included all of Trevor's expenses from February 6, 2016 through March 16, 2018, without finding that these were solely caused by the discovery violation. We conclude the court abused its discretion by

---

[11] Icon cites Albright v. Fish, 138 Vt. 585, 422 A.2d 250 (1980), to support its argument that Trevor's pleading decision cannot preclude shifting the costs of defense and other losses to those who were primarily responsible. In Albright, we held: "where the wrongful act of one person has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interests, litigation expenses, including attorney's fees, are recoverable." Id. at 591, 422 A.2d at 254. Albright is clearly inapplicable in this case because Icon was not sued solely on the basis of actions taken by Osborne Construction, Osborne, and Merusi. Based on the record, it is clear that Icon would have been drawn into this litigation based upon allegations of its own active wrongdoing.

approving a thirty-percent increase in the lodestar figure due to Icon's litigation misconduct. Thus, we strike $104,668 from the award, but affirm the remaining award for attorney's fees of $209,335. Because the award of fees for sanctions was in the alternative and because we affirm Trevor's CPA claims, Icon's arguments regarding the alternative award is moot.

¶ 85. "Trial courts have ample discretion in determining the amount of attorney's fees to award, and we will not disturb the court's decision unless it has abused this discretion." Bonanno v. Verizon Bus. Network Sys., 2014 VT 24, ¶ 23, 196 Vt. 62, 93 A.3d 146. See also Kwon v. Eaton, 2010 VT 73, ¶ 22, 188 Vt. 623, 8 A.3d 1043 (mem.) ("The court was in the best position to evaluate the reasonableness of legal fees and, as noted earlier, we accordingly allow the court substantial discretion." (quotation omitted)); Burlington Free Press v. Univ. of Vt., 172 Vt. 303, 310, 779 A.2d 60, 66 (2001) ("In considering [the factors a trial court relied on in awarding attorney's fees], we bear in mind that the single most important element is the discretion of the trial judge, who has had a continuing relationship with the parties throughout the suit." (quotation omitted)). "For purposes of an award of attorney's fees under Vermont Law, the touchstone is reasonableness." Perez v. Travelers Ins., 2006 VT 123, ¶ 13, 181 Vt. 45, 915 A.2d 750 (quotation omitted). "In the context of applying the attorney's fee provision of the Consumer [Protection] Act, we have held that . . . [the trial court's] task is to determine what constitutes reasonable fees in each instance." Id. ¶ 9 (quotation omitted).

¶ 86. To calculate attorney's fees, "the court looks to the 'most useful starting point,' the 'lodestar figure,' by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." L'Esperance v. Benware, 2003 VT 43, ¶ 22, 175 Vt. 292, 830 A.2d 675 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Then, using the lodestar as a starting point, the trial court can adjust the "fee upward or downward based on various factors." Id. Some factors a court may consider are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3. The decision to adjust the lodestar is within the trial court's "wide discretion," L'Esperance, 2003 VT 43, ¶ 21, and "must be determined on the facts of each case." Hensley, 461 U.S. at 429.

¶ 87. Here, the trial court noted Icon did not challenge the hourly rates that Trevor used in calculating her request for fees, and correctly concluded that those rates were "reasonable in light of the novelty and difficulty of the questions in this matter, counsel's experience, reputation and ability, the results they obtained in this case, and the fees they customarily charge in matters of this nature." The trial court then addressed the number of hours expended on the case. The trial court excluded time spent pursuing claims against several other defendants and time spent on work that was "not necessary" or "of marginal relevance." Subtracting the foregoing disallowances, which totaled $28,855, the resulting lodestar figure was $348,892. The trial court acted well within its discretion in calculating the initial lodestar amount, though this does not appear to be challenged on appeal.

¶ 88. The trial court then considered whether the lodestar should be adjusted upward or downward, noting the twelve Hensley factors. 461 U.S. at 430 n.3. The court first agreed with Icon that a substantial downward adjustment was warranted. It explained that the case was not "particularly difficult, complex, or novel" and that Trevor did not prevail on her claim on the merits, but rather as a consequence of the default. Additionally, the court noted that the fees sought by Trevor were significantly greater than what has been allowed in other cases of the same type.

Therefore, the court concluded that a forty-percent, or $139,558, downward adjustment was warranted. This downward adjustment has not been challenged on appeal, and we find no abuse of discretion.

¶ 89. However, the court then noted that the analysis was not complete "because there [was] one more issue that must be factored into the analysis, namely, Icon's litigation conduct" and concluded that such conduct warranted a thirty-percent, or $104,668, increase in the lodestar. The court explained that this increase was "chiefly because of Icon's violations of its discovery obligations, which constituted by far the most significant component of its overall abusive litigation conduct in this case." The trial court explained that these discovery violations "were part of a larger pattern of abusive litigation conduct" and cited a "particularly egregious example of that misconduct" that occurred in the context of Trevor's designation of the Rule 30(b)(6) deposition passages that she intended to introduce into evidence. There, Icon had objected to hundreds of pages worth of Trevor's deposition designations only to withdraw all of those objections during a hearing after conceding it had no basis for objecting to any of the passages. The court found that "[s]uch conduct on Icon's part was not only inexcusable; it also very significantly increased the burden of work that [Trevor's] counsel had to do in this case." With this second adjustment, the court arrived at an award of $314,003 for attorney's fees under the CPA.

¶ 90. As explained above, this Court grants the trial court broad discretion to calculate a reasonable award for attorney's fees because it is the trial court "who has had a continuing relationship with the parties throughout the suit," Burlington Free Press, 172 Vt. at 310, 779 A.2d at 66 (quotation omitted), and is therefore "in the best position to evaluate the reasonableness of legal fees." Kwon, 2010 VT 73, ¶ 22. However, based on the record before this Court, we conclude that the trial court abused this broad discretion by increasing the lodestar based on Icon's "pattern of abusive litigation conduct." From our reading of the trial court's decision, it appears

41

the trial court had two rationales for increasing the lodestar due to Icon's litigation conduct—primarily, that the conduct was "inexcusable" and deserved punishment, and secondarily, that the conduct imposed additional work on Trevor's counsel. Neither of these were legitimate considerations the trial court could make within its discretion, however broad, when adjusting the lodestar.

¶ 91.    Regarding the trial court's first rationale, this Court is unwilling to permit an award of attorney's fees, which is required for the prevailing party under the CPA, to be used to essentially sanction a party for misconduct without complying with the processes normally required to impose a sanction. Furthermore, even sanctions orders made with the requisite findings require the payment of the actual reasonable fees directly caused by the misconduct, not a reasonable fee that is then increased to some degree as punishment for said misconduct. See Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1189, __ U.S. __, __ (2017) (requiring sanctioning court to "determine which fees were incurred because of, and solely because of, the misconduct at issue" when issuing award of attorney's fees in relation to sanctions order).

¶ 92.    To the second rationale, any additional hours of work that may have been caused by Icon's misconduct had already been included in the calculation for the baseline lodestar figure. By approving the hours expended on the case, other than those spent pursuing claims against other defendants and time spent on work that was "not necessary" or "of marginal relevance," trial court inherently included the hours Trevor's counsel spent addressing and responding to Icon's discovery violations and other litigation misconduct. By then adjusting the lodestar upward thirty percent based on its conclusion that the misconduct "very significantly increased the burden of work that [Trevor's] counsel had to do in this case," the trial court "double-dipped" and credited those hours twofold. In Blum v. Stenson, 465 U.S. 886, 897 (1984), the U.S. Supreme Court affirmed that, in some circumstances, an upward adjustment to a lodestar amount can be necessary. However, there, the Court struck the fifty-percent upward adjustment because the "reasons

42

offered . . . to support the upward adjustment [did] not withstand examination." Id. at 898. Among other reasons, the Court struck the upward adjustment because "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a few based on the number of billable hours times reasonable hourly rates." Id. We find this reasoning applicable here. The extra time spent by Trevor's counsel to address and respond to Icon's misconduct—no matter how egregious or systemic the misconduct—was fully reflected in the number of billable hours recorded by counsel, and approved by the trial court, in the initial lodestar calculation. To then adjust the lodestar upward to account for those same hours would be inappropriate.

¶ 93.    For these reasons, the upward adjustment was an abuse of the trial court's broad discretion, and thus cannot stand. Therefore, we strike the thirty-percent increase, or $104,668, from the attorney's-fee award, but affirm the remaining $209,335 award for attorney's fees.

### B. Expenses Allegedly First Claimed in Reply Memorandum

¶ 94.    Lastly, Icon argues that the trial court erred in awarding $4232.35, contending that it had no opportunity to challenge the expenses because Trevor raised them for the first time in a reply memorandum. We disagree.

¶ 95.    As explained above, Trevor filed a motion for attorney's fees and costs, seeking $10,241.32 in taxable costs and two alternative awards for attorney's fees and expenses. Icon opposed $4232.35 of the costs, arguing that those expenses were not recoverable under Rule 54 because that portion consisted of: costs incurred to serve process upon parties other than Icon; costs for copies of documents needed for deposition designations used at trial; additional copying costs; and witnesses fees which lacked the certification required by 21 V.S.A. § 1553. The trial court agreed that Trevor's costs under Rule 54 were limited to $6008.97 and excluded the contested $4232.35. However, it did note that the excluded $4232.35 might be recoverable as nontaxable

costs in connection with Trevor's award of attorney's fees and expenses, but deferred "ruling on that issue until such time as [Trevor's] fee application [was] ripe for decision."

¶ 96.    It appears that Trevor did not amend or refile a motion for attorney's fees and costs, instead resting on her preliminary motion, and thus did not reiterate her request for $4232.35 after the trial court deferred ruling on the issue.  Icon's opposition to Trevor's preliminary motion for attorney's fees and costs, which was filed after the trial court's order deferring ruling on the $4232.35, did not mention or oppose the $4232.35.  In Trevor's response memorandum, she noted that Icon did not address the trial court's decision to defer ruling on the $4232.35 and "[t]hus, Icon does not dispute that these costs are recoverable as expenses," and in fact, "Icon's Opposition [did] not contest any of the expenses detailed in" Trevor's motion.  The trial court ultimately awarded Trevor $25,235.33 in nontaxable expenses, which included the initially-excluded $4232.35.  In a footnote, the trial court noted that Icon did not challenge any of Trevor's nontaxable expenses.

¶ 97.    We agree with Icon that "[i]t is axiomatic that a court should not consider claims raised for the first time in a reply memorandum."  See, e.g., In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 16, 182 Vt. 340, 939 A.2d 504 (explaining that court will not address issue raised for first time in reply memorandum).  However, that is not the case here.  Trevor included her request for the costs that totaled the contested $4232.35 in her preliminary, and only, motion for attorney's fees and costs.  The trial court then limited her taxable costs award and excluded the $4232.35, but noted that said costs might still be recoverable as nontaxable costs in connection with attorney's fees.  Icon then, after the trial court deferred ruling, filed its motion in opposition of Trevor's preliminary motion for attorney's fees and costs, but failed to address the $4232.35 that was included in Trevor's preliminary motion and in the trial court's order.  In her reply, Trevor properly called the court's attention to Icon's failure to oppose her request for nontaxable expenses, which included the $4232.35.  Icon had sufficient opportunity to oppose including the $4232.35

in the nontaxable-expenses award prior to the court's order because it was not, as Icon alleges, raised for the first time in Trevor's reply memorandum.[12]

Reversed as to the thirty-percent upward adjustment of the lodestar and remanded to the trial court to strike $104,668 from the award of attorney's fees.  Affirmed in all other respects.

FOR THE COURT:

_____

Associate Justice

---

[12]  Because we do not find that Icon should be afforded a new trial, we need not address Trevor's conditional request for a new trial.